STATE v. HOUSTON BELT & TERMINAL RY. CO. (No. 5333.)†

(Court of Civil Appeals of Texas. Austin. March 18, 1914. Rehearing Denied April 15, 1914.)

1. COMMERCE (§ 27*)—POWER TO REGULATE—INTERSTATE COMMERCE.

A domestic corporation operating terminal facilities and depots within the state and controlling the operations of such facilities, whose service consisted entirely of switching and transferring cars between points in and near a city for other companies, in furnishing freight and passenger depots, and in loading and unloading cars for other railway companies, which, for an agreed toll or rental, used its terminal facilities, though it did not participate in the through rate, and was not a party to the bills of lading, and though its charges did not come from a shipper, and were made directly against the other railroad companies upon a wheelage basis, was engaged in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. COMMERCE (§ 69*)—POWER TO REGULATE—INTERSTATE COMMERCE.

Rev. St. 1911, art. 7384, providing that every individual or domestic or foreign corporation owning or controlling any terminal companies or railroads doing a terminal business within the state shall pay an occupation tax equal to 1 per cent. of its gross receipts from all sources whatever, is not invalid as imposing a burden upon interstate commerce, as applied to a terminal railway company engaged in domestic and interstate commerce, since it does not impose a direct tax upon the gross receipts, but an occupation tax, levied for the privilege of exercising a particular occupation, and such a tax is valid, though its amount is determined from the gross receipts.

. [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 100, 113–119; Dec. Dig. § 69.*]

3. COMMERCE (§ 69*)—POWER TO REGULATE—INTERSTATE COMMERCE.

The state has power to levy a valid occupation tax upon the domestic business of a company owning and operating a terminal railway within the state and transacting both interstate and domestic business.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 100, 113–119; Dec. Dig. § 69.*]

4. STATUTES (§ 188*) — RULES OF CONSTRUCTION—MEANING OF LANGUAGE.

It is a cardinal rule of construction, incorporated into the statute law in the state, that the language of a statute must be given its usual and ordinary import, unless other language used by the same Legislature indicates that another and different meaning was intended.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. § 188.*]

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Civil action by the State against the Houston Belt & Terminal Railway Company. From a judgment for defendant, the State appeals. Reversed and rendered.

B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State. Andrews, Ball & Streetman, of Houston, for appellee.

KEY, C. J. The state of Texas brought this suit against the Houston Belt & Terminal Railway Company, seeking to recover certain taxes alleged to be due under article 7384 of the Revised Statutes of 1911, which article is a portion of an act of the Thirtieth Legislature providing for the levy and collection of occupation taxes upon certain classes of persons and corporations.

The answer of the defendant, among other things, assailed the constitutionality of the statute referred to, and charged that it violated several provisions of the federal Constitution and of the Constitution of this state. The defendant is a domestic corporation.

According to the undisputed facts, if the statute referred to is valid, the state is entitled to recover $27,656.49 as taxes, and the further sum of $4,315.35 as interest. The pleadings filed by each party were sworn to, and the facts therein stated were not denied under oath, and therefore the trial court correctly held that the facts were as stated in plaintiff's petition, and in the defendant's answer, and we adopt that court's findings of fact. As conclusions of law, the learned trial judge held: (1) That the defendant was a common carrier engaged in the transportation of interstate and foreign commerce; and (2) that the article of the statute referred to, and the act of the Legislature under which the suit was brought, attempt to reach and tax the gross receipts of the defendant, from whatever source derived, including those from interstate commerce, and is therefore in contravention of the provision of the federal Constitution relating to interstate and foreign commerce; and for

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Application for writ of error pending in Supreme Court.

that reason the statute was held to be void, and judgment was rendered for the defendant, and the state has appealed.

[1] The first complaint in appellant's brief embodies the contention that the trial court erred in holding that appellee is a common carrier engaged in interstate and foreign commerce, and in that brief the facts bearing upon that point are summarized as follows: "It was not alleged that appellee and any other railroad company was under a common management and control, but appellee alleged that it was a corporation organized under the laws of Texas and maintaining its principal office in Houston, Tex., and there operating terminal facilities and depots, and that appellee 'controlled' the operations, etc. of such facilities. It did not participate in the through rate, nor was it a party to the bills of lading, etc., nor did its charges come from the shipper, but were made directly against the other railroad companies upon a wheelage, etc., basis, so much per car switched, etc. Its service consisted entirely of switching and transferring cars between points in and near Houston for other railroad companies, in furnishing freight and passenger depots, and in loading and unloading cars for other railroad companies at that place, and such other railway companies, for an agreed toll or rental used appellee's terminal facilities."

Conceding the facts to be as stated, upon the authority of United States v. Union Stockyards, etc., Co., 226 U. S. 296, 33 Sup. Ct. 83, 57 L. Ed. 226, we overrule the contention urged in behalf of the state, and uphold the decision of the trial court upon that point. The case cited is quite analogous, and the points urged and the argument made by the Attorney General's department in this case were fully considered and decided otherwise in that case.

[2] As to the second ruling, we have reached a conclusion at variance with that reached by the trial court, and the reasons for that conclusion will now be stated. On account of that provision of the federal Constitution which confers upon Congress exclusive power to regulate commerce between the several states and foreign countries, the Supreme Court of the United States, in a long line of decisions, has held that it is not within the power of a state to levy any tax the direct effect of which is to impose a burden upon interstate or foreign commerce. Within that class of cases are several striking down and declaring void certain state enactments held by the Supreme Court to constitute a direct tax upon the gross receipts of interstate carriers, among which may be mentioned G., H. & S. A. Ry. Co. v. Texas, 210 U. S. 217, 28 Sup. Ct. 638, 52 L. Ed. 1031, and Meyer v. Wells Fargo Express Co., 223 U. S. 298, 32 Sup. Ct. 218, 56 L. Ed. 445. On the other hand, and parallel with that line of decisions, is a class of cases decided by the same high authority, and holding that it is no violation of any provision of the federal Constitution for a state to levy and collect an excise or occupation tax upon a carrier engaged in domestic commerce, even though the legislation fixing the tax prescribes that the amount thereof shall be equal to a given per centum of the gross receipts of the carrier, and notwithstanding the fact that a portion of such receipts may be derived from transportation which constitutes interstate commerce. The leading case in support of that doctrine is Maine v. Grand T. Ry. Co., 142 U. S. 217, 12 Sup. Ct. 121, 163, 35 L. Ed. 994; and in the more recent case of United States Express Co. v. Minnesota, 223 U. S. 355, 32 Sup. Ct. 215, 56 L. Ed. 459, the court said: "The right of the state to tax property, although it is used in interstate commerce, is thoroughly well settled. Postal Tel. Cable Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311, 5 Interst. Com. R. 1; Pullman Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613, 3 Interst. Com. R. 595; Ficklen v. Taxing District, 145 U. S. 1, 22, 12 Sup. Ct. 810, 36 L. Ed. 601, 606, 4 Interst. Com. R. 79. The difficulty has been, and is, to distinguish between legitimate attempts to exert the taxing power of the state and those laws which, though in the guise of taxation, impose real burdens upon interstate commerce as such."

In Maine v. Grand T. Railway Co., supra, the state statute levied an excise tax for the privilege of exercising its franchise in the state upon every corporation, person, or association operating a railroad within that state (Maine), and prescribed that the amount of tax should be equal to a per centum of the gross receipts of the railroad. The gross receipts referred to were derived in part from interstate commerce, but, notwithstanding that fact, the Supreme Court held that the statute was, in effect, an occupation tax, and did not place a direct burden upon interstate commerce; and in the course of the opinion it was said: "The court below held that the imposition of the taxes was a regulation of commerce, interstate and foreign, and therefore in conflict with the exclusive power of Congress in that respect; and on that ground alone it ordered judgment for the defendant. This ruling was founded upon the assumption that a reference by the statute to the transportation receipts and to a certain percentage of the same in determining the amount of the excise tax was, in effect, the imposition of the tax upon such receipts, and therefore an interference with interstate and foreign commerce. But a resort to those receipts was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the excise tax which should be levied; and we are unable to perceive in that resort any interference with transportation, domestic or foreign, over the road of the railroad company, or any regulation of commerce which consists

in such transportation. If the amount ascertained were specifically imposed as the tax, no objection to its validity would be pretended. And, if the inquiry of the state as to the value of the privilege were limited to receipts of certain past years, instead of the year in which the tax is collected, it is conceded that the validity of the tax would not be affected, and, if not, we do not see how a reference to the results of any other year could affect its character. There is no levy by the statute on the receipts themselves, either in form or fact; they constitute, as said above, simply the means of ascertaining the value of the privilege conferred."

With the foregoing statement of certain established rules and principles, and quotations from pertinent cases, let us examine the statute involved in this case. The Thirtieth Legislature passed a law entitled "An act providing for the levy and collection of an occupation tax upon individuals, companies, corporations and associations, pursuing any of the occupations, viz.: Express companies; telegraph and wireless telegraph; gas; electric light, electric power or waterworks or water and light plant business; * * * the business of street railway companies, the business of interurban, trolley, traction or electric street railway companies, * * * the business of owning, controlling, managing or operating any terminal railway company or terminal railway," etc. Act 30th Leg. (1st Ex. Sess.) c. 18.

Sections 1 to 15 of that act, in express terms, levy occupation taxes upon all individuals, companies, corporations, or associations owning, controlling, operating or managing a large number of specified private or quasi public enterprises, and section 16 reads as follows: "Each and every individual, company, corporation or association, whether incorporated under the laws of this or any other state or territory or of the United States, or any foreign country, which owns, controls, manages or leases any terminal companies, or any railroad doing a terminal business within this state, shall, on or before the first day of April, 1907, and quarterly thereafter, make a report to the comptroller of public accounts, under oath of the individual, or of the president, treasurer or superintendent of such company, corporation or association showing the total amount of its gross receipts from all sources whatever within this state during the quarter next preceding, and the average market value thereof during said quarter. Said individuals, companies, corporations and associations, at the time of making said report, shall pay to the treasurer of the state of Texas an occupation tax for the quarter beginning on said date equal to one per cent. of the total amount of its gross receipts from all sources whatever as shown by said report."

A portion of section 25 of that act is also deemed pertinent, and which reads as follows: "All persons, associations of persons, firms, and corporations upon whose business an occupation tax is imposed under this act, shall, upon the taking effect hereof, be exempted and relieved from the operation of the act of the 29th Legislature, approved April 17, 1905, being chapter 146 thereof, providing for the taxation of the intangible assets of certain corporations, associations and individuals, and all sections of the act of the 29th Legislature, being chapter 148, thereof approved April 17, 1905, imposing on (an) occupation tax upon the occupations herein taxed are hereby repealed."

[3, 4] Unless it should be held that the Legislature did not intend to levy an occupation tax, and used language indicating that it did so intend as a subterfuge, in order to place a direct tax upon gross receipts, then it seems to us that it must be held that the statute constitutes a valid exercise of state authority, and is free from the objection urged; and we do not feel called upon to thus impugn the motives and purposes of the members who constituted the Legislature and the Governor who approved the act. The proof shows that appellee owns and operates a terminal railway within the city of Houston, and that it transacts both an interstate and domestic business. Now, it cannot successfully be denied that the state has the power to levy a valid occupation tax upon the domestic business referred to; and the Supreme Court of the United States has held, and, as we understand, still holds, that a statute may prescribe that the amount of such occupation tax may be fixed as a given per centum upon gross receipts, including those derived from interstate commerce. It is a cardinal rule of construction, incorporated into statute law in this state, that, in construing a statute, its language is to be given its usual and ordinary import, unless other language used by the same Legislature indicates that another and different meaning was intended. Applying that rule to this case, it seems to us that it must be held that the tax in question was not intended as a direct tax upon gross receipts, but as an occupation tax, or a tax levied for the privilege of exercising a particular occupation; and, if such was the legislative intent and purpose, then the statute does not violate any provision of the federal Constitution.

Learned counsel for appellee insist that no material difference exists between this statute and the Texas statute which was construed by the Supreme Court in Galveston, H. & S. A. Ry. Co. v. Texas, supra. We are unable to concur in that view. That statute was not any portion of a law purporting to levy occupation taxes, did not designate the tax as an occupation tax, and used interchangeably the terms a tax upon gross receipts and a tax equal to 1 per cent. of the gross receipts. The Supreme Court of the United States and this court construed that statute as levying a tax directly upon the gross receipts, though

the Supreme Court of this state and a large minority of the Supreme Court of the United States held otherwise. That case comprised one of a series of cases in this court involving the same question, and the reasons which induced this court to reach the conclusion that the statute there under consideration was not an excise or occupation tax, but a tax upon gross receipts, will be found in the opinions filed in the case of Galveston, H. & S. A. Ry. Co. v. Davidson, 93 S. W. 436; and one of the strongest reasons was that, as originally presented to the Legislature, that law was entitled "An act levying an occupation tax," and in its body the tax was designated as an occupation tax, which provisions so designating the tax were stricken out before the bill passed the Legislature, thereby indicating that the Legislature did not intend to levy an occupation tax. The enactment now under consideration is designated in its caption, and in almost every section, as an occupation tax law, and we find no sufficient reason to give it any other construction. It would seem to be inconsistent, if not absurd, to say that a state may lawfully levy an occupation tax, the amount of which is to be determined by gross receipts from whatever source derived, and then to say that, because the state has so framed its law as to accomplish that result, it must be held that it did not intend to levy an occupation tax, but that its purpose was to levy a direct tax upon gross receipts.

We also deem it proper to say that, in our opinion, there is much force in the contention of appellant's counsel that the statute under consideration, in effect, levies a commutation tax, which method of state taxation has been held not to contravene the federal Constitution. Ficklen v. Taxing Dist., 145 U. S. 1, 12 Sup. Ct. 810, 36 L. Ed. 601; Postal Telegraph Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311; McHenry v. Alford, 168 U. S. 651, 18 Sup. Ct. 242, 42 L. Ed. 614. While it is true that by section 22 it is declared that, except as therein stated, all taxes levied by the act should be in addition to all other taxes levied by law, it is provided by section 25 that all who are required to pay an occupation tax by reason of that law are to be exempted and relieved from the operation of a former law providing for the taxation of intangible assets. But for that provision, appellee's intangible assets would be subject to taxation under the former law referred to, and therefore it would seem that it was the purpose of the Legislature, in the enactment of section 16 of the law referred to, that the tax therein levied should be in lieu of and as a substitute for the taxes which might otherwise have been collected under the former law. And, if such was its purpose, and the amount of taxes so levied by section 16 is not shown to be unreasonably more burdensome than the taxes from which appellee is relieved, it would seem that it should be upheld as a commutation tax, even if it be construed as a tax upon gross receipts. G., H. & S. A. Ry. Co. v. Texas, supra.

We deem it unnecessary to discuss any other question, and content ourselves with the statement that, after due consideration of all the questions involved in the appeal, our conclusion is that the statute under consideration violates no provision of either federal or state Constitution, and therefore it becomes our duty to uphold and enforce it.

In closing this opinion, it is deemed proper to express our satisfaction with the assistance which has been rendered by able counsel of the respective litigants, consisting of well-prepared briefs, and of concise and pointed printed and oral arguments.

For the reasons stated, the judgment appealed from is reversed, and judgment here rendered for appellant for $31,971.84.

Reversed and rendered.