BATCHELDER & SNYDER COMPANY *vs.* UNION FREIGHT RAILROAD COMPANY.

Suffolk. January 18, 1927.— May 18, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Carrier,* Of goods. *Union Freight Railroad Company.*

The Union Freight Railroad Company paid the freight for the shipment from Chicago of a car of perishable meats and received the car from the Boston and Albany Railroad Company in Boston at 1:45 A.M. on May 13. The car had been inspected and found to be iced for forty-eight hours' preservation. It was to be delivered to the purchaser at his wharf. At the time of receipt, the freight company already had another car for delivery to the same customer and after that car was delivered the capacity of the customer's wharf was exhausted, and, therefore, the company placed the second car on another wharf where it could be reached for inspection and re-icing and gave to the customer a "constructive placement" notice as a basis for a demurrage charge, but gave no information as to the whereabouts of the car, although the customer made inquiry. On May 16, the freight company pulled out the car, gave the customer a post card notice, "bill of lading required here," and placed the car on the customer's wharf on May 17. On opening the car, inspection disclosed that only traces of ice remained therein and that its contents were damaged. A judge who, without a jury, heard an action against the freight company for damages resulting to the shipment, found and ruled that interstate transit ended with the acceptance of the car by the defendant on May 13; that no contract between the parties existed upon the bill of lading and no claim under the bill of lading was involved; and that the defendant was liable as a common carrier for damages resulting from its failure to inform the consignee of the disposition which it had made of the car between its acceptance from the interstate carrier and its delivery to the consignee. On exceptions by the defendant, it was *held,* that

(1) Transit began when the car was received by the defendant on May 13 and ended when it was "set" at the specified place of delivery, and throughout that period the defendant occupied the position of a common carrier in control of the car and of its contents and no contract between the plaintiff and the defendant existed upon the bill of lading and no claim under the bill was involved;

(2) The action not being based upon any contract contained in or arising out of the bill of lading, rulings in regard to notice of loss and claim under the bill of lading and considerations of interstate transportation were rendered immaterial;

(3) Neither by the "constructive placement" nor in any other way did the defendant tender delivery or notify the plaintiff where the car

could be found or its contents be given such attention as might be needed;

(4) In the circumstances, a practice of the defendant to make no inspection and do no re-icing, though known to the plaintiff, furnished no defence and was immaterial;

(5) A finding for the plaintiff was warranted.

CONTRACT OR TORT for damages alleged to have been caused by delay in transportation to the plaintiff of a carload of pickled hams and by failure of the defendant to care for the merchandise during the delay. Writ dated March 24, 1924.

In the Superior Court, the action was heard by *Weed,* J., without a jury. Material facts are stated in the opinion. The plaintiff asked for and, subject to exceptions by the defendant, the judge gave the following rulings:

"3. Transportation of the plaintiff's merchandise was not completed by the defendant until it delivered it to the plaintiff at Constitution Wharf; in other words, the merchandise was in transit while it remained upon tracks on the south side of Commercial Wharf, or elsewhere."

"7. It was the duty of the defendant to place the car promptly upon its receipt, to wit, on May 13, 1922, or to set it elsewhere where icing could be effected or delivery taken, and to give immediate notice of the location of the car to the plaintiff, or itself to ice the car and see that it was kept properly iced until delivery to the plaintiff."

"10. Under the provisions of 34 U. S. Sts. at Large a carrier is bound to furnish refrigeration or icing upon reasonable request.

"11. The burden of proving freedom from negligence is on the carrier or party in possession of the merchandise.

"12. If carelessness or negligence is an element in the case of loss, damage or injury the carrier is not permitted to require notice of claim or a filing of claim as a condition precedent to recovery.

"13. The defendant, a common carrier, was engaged in completing a shipment in interstate commerce and its liability is that of a common carrier.

"14. The liability of a common carrier is that of an insurer. Transportation of merchandise in question was not completed until the shipment arrived at point of destination and is there delivered.

"15. The defendant was a terminal carrier so far as the shipment in question is concerned, [if terminal means same as switching carrier].

"16. A common carrier is released from liability as an insurer only when it is free from fault.

"17. A carrier which receives for delivery within a reasonable time a car which must go through a point where the facilities are greatly overcrowded so that delay must result, will be liable for the loss of the property caused by delay at that point.

"18. Since Commercial Wharf was neither the destination of the car in question nor a known hold point, it is immaterial whether or not constructive notice were given."

The defendant asked for the following rulings:

"3. There is no evidence of any contract or agreement between the parties in this proceeding relative to the switching of cars."

"6. If the plaintiff had any rights to have a car switched or placed on the track adjoining its place of business it was nevertheless not entitled to have the car in question so placed or switched until it had first surrendered the order bill of lading to the defendant.

"7. The plaintiff had no rights with respect to ordering the handling of the car in question or to demand a delivery of said car to it until it had first surrendered to the defendant the order bill of lading."

"10. If, at the time the defendant received said car from the Boston and Albany Railroad, the track adjoining the plaintiff's place of business was occupied by cars so that the car in question could not then be placed, or prior to the receipt of the car in question by the defendant there were other cars entitled to be placed on said track before the car in question, then in either case the defendant was entitled to give or send the constructive placement notice to the plaintiff.

"11. The defendant complied with the provisions of the demurrage tariff relative to constructive placement notice if in fact it mailed or sent such notice and it is immaterial whether or not such notice was ever received by the plaintiff.

"12. There is no evidence that the defendant was negligent with respect to the shipment in question.

"13. There is no evidence that a claim in writing, as required by the provisions of the bill of lading, was presented or filed by the plaintiff."

Of these requests by the defendant, the judge granted those numbered 10, 11 and 13, gave those numbered 6 and 7 after adding the words, "save as modified by course of business of parties," and denied those numbered 3 and 12. To the refusal to give those numbered 3 and 12, and to give those numbered 6 and 7 in the form requested, the defendant excepted.

The judge found for the plaintiff in the sum of $4,187.06 and reported the action to this court for determination.

*A. W. Blackman,* for the defendant.

*A. T. Johnson,* for the plaintiff.

WAIT, J. The defendant is a switching carrier operating a line through Atlantic Avenue in Boston between the freight terminals of the Boston and Albany, the New York, New Haven and Hartford, and the Boston and Maine railroads, and delivering cars at various private sidings which serve wharves and warehouses along the avenue. It has no freight station, but in 1922 had a public siding near its office at 87 Atlantic Avenue. Cars which it cannot "set," that is, place at the consignee's siding, it stores on such private sidings as are available at the moment. It has no facilities for icing cars, and it is not its custom to re-ice cars containing perishable goods during the period between their arrival on its line and their "setting" at the point of unloading. In the absence of special instructions it "sets" cars received for the same consignee in the order of their arrival and, ordinarily, makes but one delivery a day at a siding. With consignees like the plaintiff, it often "sets" cars during the day's switching without first requiring delivery of the bill of lading, on the understanding that the bill shall be sur-

rendered forthwith and, in any event, not later than nine o'clock A.M., of the following day. It makes a demurrage charge to the consignee when delivery of a car consigned or ordered to any except a public siding cannot be made because of any condition attributable to the consignee, and the car, consequently, is not unloaded or released within forty-eight hours thereafter. As a basis for such charge it sends to the consignee by mail a "constructive placement" notice. The plaintiff was familiar with these practices.

A carload of pickled hams was shipped by Hately Brothers Company from Chicago on a uniform order bill of lading, consigned to "Hately Brothers Company, . . . Boston, notify Batchelder & Snyder Co. at Boston," routed by the New York Central and the Boston and Albany railroads. It left Chicago on May 9, 1922, and in usual course was due in Boston on the fourth morning following. A draft, with bill of lading attached, reached Boston on May 11, and was presented for acceptance to Batchelder & Snyder Company, the plaintiff, on that day. Order was given on May 12 to the Boston and Albany Railroad Company to place the car on plaintiff's siding at Constitution Wharf. The car arrived at the Boston and Albany yards early on May 13, was inspected, and was delivered to the defendant at 1:45 A.M., for placement on plaintiff's siding at Constitution Wharf. It was then sufficiently iced to preserve its contents, which were then in good condition, for forty-eight hours. The defendant paid the freight due to the Boston and Albany Railroad Company. The defendant had in its control at the time, another car of meat, an earlier arrival, which it set for the plaintiff on May 13. It was unable to set the second car because the siding was thus occupied and, accordingly, it placed it on a private siding on Commercial Wharf. There it could be reached either for unloading or re-icing. The defendant knew it contained meat, but made no inspection and did no re-icing. On May 13, the defendant put in the mail a "constructive placement" notice to the plaintiff, as a basis for a demurrage charge, but gave no information where the car could be found. The plaintiff made inquiries of the defendant but was not informed of the whereabouts of the

car. It paid the draft on May 15, and, presumably, then took up the bill of lading. The defendant, on the evening of May 16, pulled out the car which it had "set" on May 13; gave post card notice to the plaintiff of the arrival of the car here in question "bill of lading required here"; and at 3:30 P.M. on May 17, set this car. At Constitution Wharf the plaintiff signed a "delivery check" dated May 16, acknowledging receipt in "apparent good order," and, on opening the car, called the Boston and Albany Railroad Company to inspect it. Inspection disclosed that only traces of ice remained in the car and that its contents were damaged. On May 18, bill of lading was surrendered to the defendant and the defendant presented its bill for the freight paid the Boston and Albany Railroad Company and its own charges. Payment was refused on the ground that the car could have been set on May 13. No claim for loss or damage was ever made on the Boston and Albany Railroad Company. Claim on the defendant was first made on September 23; this was also the first time that the defendant's attention was called to the condition of the car and its contents. The claim in form corresponded with a claim under the bill of lading.

In substance, the trial judge found and ruled that interstate transit ended with the acceptance of the car by the defendant on May 13; that no contract between these parties existed upon the bill of lading, and no claim under the bill of lading was involved; that transit continued until the car was "set" on May 17; that no delivery took place until that time; that an implied contract of carriage arose between the defendant and the plaintiff in accordance with which the defendant, as a common carrier, was liable for failure properly to safeguard perishable goods; that, although delivery was delayed because of conditions for which the consignee, and not the carrier, was responsible, the carrier's failure to inform the consignee of the disposition which it had made of the car between its acceptance from the interstate carrier and its delivery to the consignee defeated any claim that it was not responsible for loss resulting from lack of ordinary care during that period.

The essential question for our determination is, whether the defendant was properly held liable for damages resulting from its failure to guard from deterioration goods which it knew to be perishable. Much that has been argued is immaterial in the circumstances disclosed. The action is not based upon any contract contained in or arising out of the bill of lading. *Saxon Mills* v. *New York, New Haven & Hartford Railroad,* 214 Mass. 383. This renders rulings in regard to notice of loss and claim under the bill of lading and considerations of interstate transportation immaterial. *Chicago, Milwaukee & St. Paul Railway* v. *Iowa,* 233 U. S. 334. *Baltimore & Ohio South Western Railroad* v. *Settle,* 260 U. S. 166, 173, 174.

The defendant is a common carrier. See *Union Freight Railroad* v. *Winkley,* 159 Mass. 133; *United States* v. *Union Stock Yard & Transit Co. of Chicago,* 226 U. S. 286. It received the car for transit on its line in Boston from the yards of the Boston and Albany Railroad to the plaintiff's unloading platform at Constitution Wharf. Transit began when the car was received, and ended when it was "set" at the specified place of delivery. *Rice* v. *Hart,* 118 Mass. 201, and cases cited. *New York, New Haven & Hartford Railroad* v. *Porter,* 220 Mass. 547. There was no intermediate point when and where the car was unloaded or when and where it was accessible to the plaintiff for any purpose. The defendant occupied throughout this period the position of a common carrier in control of the car and its contents. *South Deerfield Onion Storage Co.* v. *New York, New Haven & Hartford Railroad,* 222 Mass. 535. *P. Garvan, Inc.* v. *New York Central & Hudson River Railroad,* 210 Mass. 275. *Michigan Central Railroad* v. *Mark Owen & Co.* 256 U. S. 427. *McNeill* v. *Southern Railway,* 202 U. S. 543. It was, therefore, an insurer, *Norway Plains Co.* v. *Boston & Maine Railroad,* 1 Gray, 263, *Chicago & Northwestern Railway* v. *C. C. Whitnack Produce Co.* 258 U. S. 369, 372, and cases cited, and it was bound, in dealing with what it knew to be a perishable loading, either itself to take reasonable precautions to safeguard the contents, or to notify the consignee or owner and tender delivery so that he might act. *South*

& *North Alabama Railroad* v. *Henlein & Barr,* 52 Ala. 606. *Coldman* v. *Hill,* [1919] 1 K. B. 443, 456.   See *Smith* v. *New Haven & Northampton Railroad,* 12 Allen, 531.   4 R. C. L. 749, Carriers, § 201, and cases cited.   *Emery & Co. Inc.* v. *Boston & Maine Railroad,* 230 Mass. 463.   This it did not do.   In giving the "constructive placement" notice it was, as the trial judge was warranted in finding, only laying a basis for a demurrage charge.   Neither by that notice nor in any other way did it tender delivery or notify the plaintiff where the car could be found or its contents be given such attention as might be needed.   In such circumstances, its practice to make no inspection and do no re-icing, though known to the plaintiff, furnishes no defence and is immaterial.   Doubtless this custom enters into the implied contract of carriage, *South Deerfield Onion Storage Co.* v. *New York, New Haven & Hartford Railroad, supra,* but it does not go far enough to relieve the defendant of its obligation as a common carrier to protect while it has sole control and before delivery or its equivalent.   *South Deerfield.Onion Storage Co.* v. *New York, New Haven & Hartford Railroad, supra.*

It is unnecessary to discuss the exceptions in detail.   The requests of the defendant were dealt with properly.   The refusal to direct a verdict for the defendant was right.   The defendant was not prejudiced by the action of the trial judge in giving plaintiff's requests ten, twelve, fifteen and seventeen, which, on the facts, are immaterial.   The other requests of the plaintiff were given rightly in view of the facts as the judge found them.   The rulings with the finding were right.

It follows that the exceptions of the defendant must be overruled, and, upon the report, the order must be

*Judgment for plaintiff on the finding*
*with interest and costs.*