188 So. 395

## HIGGINBOTHAM v. PUBLIC BELT RAILROAD COMMISSION et al.

No. 34936.

Oct. 31, 1938.

On Rehearing March 6, 1939.

Second Rehearing Denied April 3, 1939.

John D. Nix, Jr., and Walter B. Hamlin, both of New Orleans, for Hazel Young Higginbotham.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for Public Belt Railroad Commission.

William Boizelle, Asst. City Atty., of New Orleans, for City of New Orleans.

LAND, Justice.

Relatrix is the surviving widow of George Ernest Higginbotham, who departed this life on the 2nd day of September 1937, in the parish of Jefferson, while in the employ of respondents, and is the duly qualified Natural Tutrix of their minor child, George Ernest Higginbotham, Jr.

Relatrix was married to George Ernest Higginbotham in the Parish of St. Bernard, November 2, 1934, and she and her husband, subsequent to their marriage, established the matrimonial domicile in the City of New Orleans, Parish of Orleans.

The suit of relatrix against respondents was filed in the Civil District for the

Parish of Orleans, and is founded upon the following allegations of the petition:

"IV. That the said George Ernest Higginbotham at the time of his death was engaged by said defendants as maintenance man, on the Huey P. Long Bridge, in the Parish of Jefferson. That in line with and pursuant to his duties he was standing on the bridge on the West bank of the river taking soundings of the various piers and construction work to better ascertain that all was in good order.

"V. That soundings are taken by what might be termed a Plumb-bar with a weight attached to metal wires. That while so engaged his line came in contact with uninsulated wires of the Louisiana Power and Light Co. That said George Ernest Higginbotham received a severe electrical shock and was catapulted from the bridge to the pavement below, a distance of some 125 feet, and died instantly. That the said George Ernest Higginbotham was covered by the Workmen's Compensation Law, that is Act No. 20 of the General Assembly for the year 1914, as amended.

"VI. That under the terms of said Workmen's Compensation Law petitioner herein is entitled to compensation for the use and benefit of herself and minor child, forty six and one quarter per cent (46¼%) of his weekly wage for a period of 300 (three hundred) weeks together with an additional $150.00 to cover funeral charges, incidentals, etc.,

"VII. And petitioner now says that George Ernest Higginbotham averaged a weekly wage of $43.70; 46¼% of said weekly wage amounts to $20.21, which over a period of 300 weeks amounts to $6,063.00 which together with the said $150.00 herein referred to makes a total of $6,213.00 as first set forth and demanded in this petition."

The prayer of relatrix is for judgment in her favor, individually, and as Natural Tutrix of her minor child, against defendants, jointly, severally and in solido, for $20.21 per week over a period of 300 weeks, or $6,063, together with the sum of $150, and for all costs of suit.

After hearing had, judgment was rendered by the Civil District Court for the Parish of Orleans in favor of relatrix, individually, and as natural tutrix, as prayed for.

On appeal by respondents to the Court of Appeal for the Parish of Orleans, the exception of no right of action tendered by respondents was maintained, the judgment appealed from was reversed, and the suit of relatrix, individually, and as natural tutrix, was dismissed at her cost.

The judgment of the Court of Appeal for the Parish of Orleans is now before this court for review under the writ of certiorari herein granted.

(1) There is only one issue presented in this case. Respondents contend that the Huey P. Long Bridge is an instrumentality used in interstate commerce, and that this case falls under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59. On the other hand, relator asserts that the right of action arises under the State

Workmen's Compensation Law, Act No. 20 of 1914, § 1, the deceased being an employee of the Public Belt Railroad Commission.

The pertinent part of Section 1 of the Federal Employers' Liability Act reads as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." U. S. Code, title 45, chapter 2, § 51, 45 U.S.C.A. § 51, Act of April 22, 1908, c. 149, § 1, 35 Stat. 65.

In Fluitt v. New Orleans, T. & M. R. Co., 187 La. 87, 94, 174 So. 163, 165, this Court said: "In order to hold that plaintiff's cause of action is governed by the federal statute, it must be found that plaintiff was engaged either in interstate transportation, or in work so closely related to such transportation as to be practically a part of it. Chicago & North Western Railway Co. v. Bolle, 284 U.S. 74, 52 S.Ct. 59, 76 L.Ed. 173; Shanks v. Delaware, Lackawanna & Western R. R. Co., 239 U. S. 556, 36 S.Ct. 188, 189, 60 L.Ed. 436, L. R.A.1916C, 797.'"

In the petition in this case there is no allegation that the Public Belt Railroad of the City of New Orleans is an interstate railroad, or that the Huey P. Long Bridge is used as a transportation facility by common carriers engaged in interstate commerce.

The mere allegation in the petition "That the said George Ernest Higginbotham at the time of his death was engaged by said defendants as maintenance man on the Huey P. Long Bridge, in the Parish of Jefferson," does not, by any means, show that deceased was engaged, either "in interstate transportation, or in work so closely related to such transportation as to be practically a part of it."

In order to bring the cause of action within the plain terms of the Federal Employers' Liability Act, it is necessary to allege also that, while the employee is engaged in interstate transportation, he was also injured, or that his death resulted, from the negligence of some officer, agent, or employee of such interstate common carrier. However, in the petition in this case there is no allegation that the death of the husband of relatrix was caused by the negligence of any officer, agent, or other employee of any interstate common carrier using the Huey P. Long Bridge as a transportation facility, nor is there any allegation that his death resulted by any defect or insufficiency, due to its negligence, in its cars, engines, machinery, track, roadbed, works, or by any defect in the Huey P. Long Bridge, or in any of its appliances. It is not alleged that the deceased was run over and killed by any

engine or train of any interstate common carrier, through fault or negligence, while crossing this Bridge. On the contrary, the allegation is that, in line with his duties of plumbing the piers of the Bridge, the deceased was working *below* the super-structure of the Bridge, when the metal wire attached to his belt, and which he was using as a plumb-bar, *came in contact with an uninsulated wire of the Louisiana Power and Light Co.,* engaged in lighting the Bridge, and the deceased *was electro-cuted* and fell from the Bridge to the pave-ment.

This allegation of the petition shows clearly that the injury received by the husband of relatrix and resulting in his death, *was an accidental injury,* arising out of and in the course of his employment, without fault or negligence upon the part of respondents, or of any common carrier using the Bridge, thereby bringing the cause of action clearly within Section 1 of the State Workmen's Compensation Law, Act No. 20 of 1914.

The defect in the appliance that caused the death of the husband of relatrix was not an appliance owned and operated by respondents, or by any common carrier using the Bridge, but an appliance owned and operated negligently by the Louisiana Power and Light Co., taking the allega-tions of the petition as true, in passing up-on the exception of no right of action.

(2) It is true that the exception of no right of action was overruled by the trial Judge, and the case was tried on its merits.

But the testimony in the case fails to show that the death of the husband of relatrix was due to any fault or negligence whatever upon the part of respondents, or any common carrier using this Bridge.

Nor is there any proof that his death was due to negligence by reason of any defect or insufficiency in the cars, engines, appliances, machinery, bridge or other equipment of any common carrier, or in the plumb-bar used by deceased in deter-mining the horizontal movement of the piers of the Bridge.

The operation, construction, repair, re-moval, maintenance, and demolition of railways, railroads and bridges are declar-ed to be hazards, under Section 1, subd. 2(a), of the State Workmen's Compensa-tion Law, Act No. 20 of 1914.

Section 1 of this Act declares that the Act shall apply only to the following: "1. Every person in the service of the State, or of any parish, township, incorporated village or city, or other political subdivi-sion, *or incorporated public board or com-mission in this State* authorized by law to hold property and to sue and be sued, * * * and for such employee and em-ployer the payment of compensation, ac-cording to and under the terms, conditions and provisions hereinafter set out in this act, *shall be exclusive, compulsory and ob-ligatory",* etc. (Italics by Court.)

The law amply provides for the building of the Huey P. Long Bridge by the City of New Orleans, to be operated by the City, by and through its Public Belt Railroad Commission. The deceased was employed by this Commission as "maintenance man" on the Huey P. Long Bridge, and rela-

trix's right of action is under the State law.

(3) The record is barren of any evidence to show that The Interstate Commerce Commission has ever claimed any power or exercised any control over the Public Belt Railroad of the City of New Orleans.

Act No. 154 of the Legislature for the year 1928, amending Section 28 of article 14 of the Constitution, authorizes the City of New Orleans to build a bridge and issue up to twenty million dollars in bonds, gives the exclusive right to the City, through the Public Belt Railroad Commission, to transport or convey any railroad train over the bridge, prohibits the granting of any switching or other privileges to any railroad over the system, and makes it mandatory in order for a railroad to make use of the Bridge to enter into a contract with the City of New Orleans, on such terms as may be agreed upon, approved by three-fourths of the members of the Commission. The evidence shows that the T. & N. O. R. R., a trunk line, operates over the Huey P. Long Bridge, under contract with the City of New Orleans, and its trains are handled by the Public Belt Railroad. Ev. p. 4.

Besides, Section 7 of Act No. 179 of the Legislature for the year 1908, page 261, as ratified by the Constitution, art. 14, § 26, page 161, aside from providing and re-iterating that the Public Belt Railroad shall always be separate and distinct from any other railroad entering the City, provides that no one engaged in interstate commerce can be identified as an officer or employee of the Public Belt Railroad.

The Public Belt Railroad was first created by municipal ordinance by the City of New Orleans in 1900, this ordinance having been amended and reenacted in 1904. At that time the operations of the Public Belt Railroad were solely within the City of New Orleans, but, by virtue of Section 26 of Article 14 of the Constitution for the year 1921, the right to operate extended to other parishes outside of the Parish of Orleans; and it is distinctly set forth in the Constitution that "said Public Belt Railroad system shall be and remain the sole property of the people of the City of New Orleans at all times, and shall in no way or manner ever be hypothecated or alienated." The Public Belt Railroad is purely a local road, or terminal facility, originally confined to the city limits of the City of New Orleans, and has not been extended, even at this late date, any farther than into the adjoining parish of Jefferson.

The Public Belt operates, transfers, and switches cars over the Huey P. Long Bridge in that parish, in connection with the interchange of the S. P. R. R. on the west side of the river. It takes traffic both ways on the Bridge, to the T. & N. O. R. R. and from same. It is evident that we are not dealing here with an intrastate railroad, with system extending to the State line, and connecting there with interstate lines.

Our conclusion is that the judgment of the Court of Appeal for the Parish of Orleans, maintaining the exception of no

right of action annd dismissing relatrix's suit, individually, and as natural tutrix, is erroneous, and that the judgment of the Civil Court for the Parish of Orleans in favor of relator for compensation for the death of her husband is correct.

As shown by the record, testimony was taken on the trial of the exception of no right or cause of action, and also on the merits of the case. The testimony taken on the trial of the exception was objected to by relatrix. Exceptions of no right or cause of action must be decided upon the face of the petition, the allegations of well pleaded facts being taken as true, for the purpose of passing upon such exception. This is the uniform jurisprudence of this State. Tr. pages 1–8, 8a–13.

When the Court of Appeal for the Parish of Orleans maintained the exception of no right of action, that Court had before it all of this testimony.

It is provided in Article 7, Section 11 of the Constitution of 1921 that: "It shall be competent for the Supreme Court to require by writ of certiorari, or otherwise, any case to be certified from the Courts of Appeal to it for review, *with the same power and authority in the case as if it had been carried directly by appeal to the said court."*

There can be no doubt, if this case was before us on appeal, that this Court would have the power and authority to reverse the decision maintaining the exception of no right of action, and then to decide the case on the merits.

It is therefore ordered that the judgment of the Court of Appeal for the Parish of Orleans be annulled and reversed, and that the judgment of the Civil District Court for the Parish of Orleans be affirmed,

It is further ordered that respondents pay the costs of this application.

On Rehearing.

ODOM, Justice.

The facts relating to the employment of George Ernest Higginbotham, the character of the work which he was employed to do and was doing at the moment he was killed, and the facts relating to the cause and manner of his death, are all stated in our original opinion and need not be repeated in detail.

If, as contended by counsel for the defendants, the Public Belt Railroad Commission is a common carrier by railroad engaged in interstate commerce and the Huey P. Long Bridge, which spans the Mississippi River, is an instrumentality used in interstate commerce, plaintiffs' cause of action, if any they have, arises under, and is controlled by, the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, which we quoted in our original opinion.

The reason is obvious. Plaintiffs allege, and the testimony shows, that Mr. Higginbotham was killed while at work and that he "was engaged by said defendants as Maintenance man on the Huey P. Long Bridge", and that "in line with and pursuant to his duties he was standing on

the bridge on the West bank of the river taking soundings of the various piers and construction work to better ascertain that all was in good order".

While it is alleged that the deceased was "taking soundings of the various piers" of the bridge, it is conceded by counsel for plaintiffs that the deceased was using a plumb line to determine the horizontal movement, if any, of the piers of the bridge. The purpose of the work which deceased was engaged to do, and was doing at the time of his death, was to determine whether any defect in the structure had arisen—in short, to ascertain whether the piers of the bridge had gotten out of plumb. It was proved at the trial that this character of work is a necessary part of the maintenance of the bridge. Therefore, the deceased was engaged to do, and at the time of his death was doing, work relating to the maintenance and repair of that structure.

It is settled beyond question that one who is engaged in the repair or the keeping in suitable condition of a bridge used at the time as an instrumentality in interstate commerce is, while so working, employed in interstate commerce. The reason is that such work is so closely related to interstate commerce as "to be in practice and in legal contemplation a part of it".

In the case of Martin Pedersen v. Delaware, Lackawanna & Western R. Co., 229 U.S. 146, 33 S.Ct. 648, 649, 57 L.Ed. 1125, Ann.Cas.1914C, 153, it was held that an employee of an interstate carrier killed while carrying a sack of bolts to be used in repairing a bridge regularly in use both in intrastate and interstate commerce was employed in interstate commerce within the meaning of the Federal Employers' Liability Act.

In the course of its opinion, the court said:

"Tracks and bridges are as indispensible to interstate commerce by railroad as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment' used in interstate commerce. But independently of the statute we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. * * *

"True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce."

In the case of Peak v. Pennsylvania R. Co., 121 Pa.Super. 373, 184 A. 295, 297, the court held that:

"An employee engaged in repairing a bridge or track regularly used in both interstate and intrastate commerce is employed in interstate commerce." (Citing the Pedersen case.)

It is not here argued, nor has it been contended in any case so far as we know, that a bridge traversed by a railroad engaged in interstate traffic is not an instrumentality used in interstate commerce. Bridges are as indispensible to interstate commerce by railroad as are main line tracks, side tracks, switch tracks, crossings, and engines. These are all essential to the movement of cars, and are classed together as instrumentalities used in interstate commerce.

In Hamilton v. Louisiana Ry. & Nav. Co., 162 La. 841, 111 So. 184, the plaintiff was injured while carrying timbers about to be used in the repair of a siding in the yard of the defendant railroad company, which was a common carrier engaged in interstate commerce. He sued the railroad company for compensation under the State Workmen's Compensation Law (Act No. 20 of 1914, as amended). We held that plaintiff was employed in interstate commerce and that the Federal Employers' Liability Act applied.

In the case of New York Central R. Co. v. James Winfield, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045, L.R.A.1918C, 439, Ann.Cas.1917D, 1139, the facts were that Winfield was a section laborer assisting in the repair of the carrier's main line track, and, while so working, sustained an injury to his eye. He sued the railroad company, an interstate carrier, for compensation under the Workmen's Compensation Law of New York (Consol. Laws, c. 67). The court held that he was employed in interstate commerce and that an award in his favor under the state law could not be sustained. While numerous other cases to the same effect might be cited, it is unnecessary to cite them because this particular point is settled.

The present suit was brought against the Public Belt Railroad Commission and the City of New Orleans to recover compensation under the State Workmen's Compensation Law. The reason the Commission and the city were both made defendants is that the deceased was employed by the Commission, which is, under the law, an agency of the city, and that the Commission built and now maintains, controls, and operates both the Public Belt Railroad and the Huey P. Long Bridge, on which the deceased was employed to work and was working at the time of his death.

The defense is that plaintiffs have no cause or right of action under the state law because the Public Belt Railroad Commission is a common carrier by railroad and is actually engaged in interstate commerce; and further, that the Huey P. Long Bridge is an instrumentality used in interstate commerce; that the deceased, having been employed by the Public Belt Railroad Commission to do maintenance work on that bridge, was employed in interstate commerce, and consequently plaintiffs'

claim, if they have any, arises under, and is controlled by, the Federal Employers' Liability Act. It is material and therefore necessary for us to decide whether the Public Belt Railroad Commission is a common carrier by railroad and is engaged in interstate commerce, and whether the Huey P. Long Bridge is an instrumentality used in interstate commerce.

The Public Belt Railroad was organized and built under an ordinance of the City of New Orleans, which ordinance was filed in evidence. The Public Belt Railroad Commission was authorized by that ordinance to construct, maintain, and 'operate a double-track public belt railroad in the City of New Orleans, together with all necessary spur tracks, sidings, switch tracks, depots, wharves, shops, and stations; and authorized to operate the said railway for transportation of merchandize and freight in carloads or less than carloads. The ordinance provided "that the Public Belt Railroad shall receive and transport passengers, tonnage and cars, loaded or empty, without delay or discrimination, for any and all railroads, public carriers, firms, corporations, or individuals, without distinction".

That ordinance, in substance, was read into, and made part of, Section 28, Article 14, of the Constitution of 1921, as amended by Act No. 154 of 1928. That article of the Constitution, as amended, authorized the Public Belt Railroad Commission to "construct, maintain and operate railroads, terminals, depots, watercraft and other railroad facilities, and to acquire same either by purchase or lease, by expropriation, or otherwise".

It is undisputed that the Public Belt Railroad Commission built, and now maintains and operates, the Public Belt Railroad of the City of New Orleans, and that the Commission is now, and for many years has been, engaged in the character of business authorized by the ordinance and the Constitution.

The article and section of the Constitution above cited authorized the City of New Orleans, acting through the Public Belt Railroad Commission, to construct, maintain, and operate a bridge across the Mississippi River at or near New Orleans. Pursuant to that authority, the Commission built the Huey P. Long Bridge. It was built as "a bridge for railroad, railway and highway uses". The Constitution provides that the power and authority of the Commission to operate and maintain the bridge, "insofar as a bridge for railroad and railway uses is concerned, shall be exclusive". The Commission was authorized to acquire by purchase or lease, by expropriation or otherwise, lands or other things necessary for the construction and maintenance of the bridge and to "change any roadway, non-navigable stream or drain over which the approaches of such bridge or any other part of the Public Belt Railroad system of the City of New Orleans shall extend".

It thus appears that the Public Belt Railroad and the Huey P. Long Bridge were built and are maintained, controlled, and operated by the same authority or agency, the Public Belt Railroad Commission of the City of New Orleans, and, as shown by

the testimony to which we shall presently refer, the two, in so far as their practical uses are concerned, are so linked together as to comprise one continuous transportation system.

As to the character of business engaged in by the Public Belt Railroad Commission, the testimony shows that it handles by carrying over its lines cars of freight from wharves to industries and vice versa; cars from points on its lines to interchange with the other rail carriers which enter the City of New Orleans, the cars being destined to various points in the United States. It picks up cars brought into the City of New Orleans by other railroads from points both inside and outside the state, carries them over its tracks, and delivers them to other carriers, which in turn transport them to points beyond the borders of this state, the cars and the freight being destined for through shipment in interstate commerce. It handles freight in less than carload lots· in through movement from one railroad to another. It picks up at the wharves of New Orleans freight, such as fruit and especially bananas, brought in from the Tropics by steamship and barge lines, carries it over its tracks, and delivers it to other railroads entering the city, which roads in turn carry it to points beyond the state, such freight being destined originally for continuous movement from the Tropics, through the City of New Orleans, on to points outside this state. It also handles freight brought into the city from without this state by railroads, and carries it to the wharves for further shipment by ships and barges. In short, the Public Belt Railroad Commission serves the railroads which enter the city, the wharves, the industries, for the handling of freight destined for through shipment to and from points both inside and outside the state.

The argument of counsel for plaintiffs that the Public Belt Railroad Commission is not engaged in interstate commerce proceeds upon the theory that, because it is a local facility operating solely within the Parishes of Orleans and Jefferson for the accommodation of railroads, wharves, industries, and shippers generally, it is not itself engaged in interstate commerce even though it handles freight in interstate movement.

But our own jurisprudence is against such theory. In the case of Hamilton v. Louisiana Ry. & Nav. Co., cited supra, we said:

"The defendant is a common carrier by railroad, and, although its own line does not extend beyond the limits of the state, yet it connects at both termini with other lines which do extend beyond the state, and a large volume of both interstate and intrastate commerce flows over its rails. Defendant is therefore actually engaged in interstate commerce; and the relative volume of the one business to the other has no bearing on the fact that it is so engaged. Philadelphia & R. R. Co. v. Polk, 256 U.S. 332, 41 S.Ct. 518, 65 L.Ed. 958; Chicago K. & S. R. Co. v. Kindlesparker (C.C.A.) 234 F. 1.

"It follows, therefore, that defendant's main track and bridges are instrumentalities of interstate commerce, as are also all sidings needed or useful in operating trains carrying interstate commerce."

It has been repeatedly held by other state courts and by the Federal courts that a belt-line railroad, operating wholly within a city or other subdivision of a state for the purpose of switching cars between trunk-line railroads, is a common carrier, and that it is, while engaged in carrying freight or passengers en route from one state to another, engaged in interstate commerce. McCallum v. United States, 9 Cir., 298 F. 373 (writ of certiorari denied without opinion, 266 U.S. 606, 45 S.Ct. 92, 69 L.Ed. 464); United States v. Brooklyn Eastern Dist. Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613, 6 A.L.R. 527; Belt R. Co. v. U. S., 7 Cir., 168 F. 542, 22 L.R.A.,N.S., 582; State v. Houston Belt & Terminal R. Co., Tex. Civ.App., 166 S.W. 83; United States v. Northern Pacific Terminal Co., D.C., 144 F. 861; Batchelder & Snyder Co. v. Union Freight R. Co., 259 Mass. 368, 156 N. E. 698, 54 A.L.R. 616; Interstate Stock-Yards Co. v. Indianapolis U. R. Co., C.C., 99 F. 472; Spaw v. Kansas City Term. R. Co., 198 Mo.App. 552, 201 S.W. 927; Busch v. Brooklyn Eastern Dist. Terminal, 218 App.Div. 782, 218 N.Y.S. 516 (writ of certiorari denied, 274 U.S. 739, 47 S.Ct. 576, 71 L.Ed. 1318); McNamara v. Washington Terminal Co., 37 App.D.C. 384; Cott v. Erie R. Co., 231 N.Y. 67, 131 N. E. 737 (writ of certiorari denied, 257 U. S. 636, 42 S.Ct. 48, 66 L.Ed. 409).

As to the Huey P. Long Bridge, the testimony shows that the Public Belt Railroad Commission operates, switches, and transfers cars over the bridge in connection with the interchange between the various railroads, and that the cars carried over the bridge are destined to points outside the state. It shows that the T. & N. O. R. R., a trunk line known as the Southern Pacific, operates under contract both passenger and freight trains over the Huey P. Long Bridge. Some of the trains operating over the bridge originate outside the state and bring to New Orleans both passengers and freight from outside the state, and those made up in New Orleans go west to points as far as California, Washington, and Oregon, carrying passengers, baggage, freight, and mail to those points.

Mr. McCloskey, terminal agent for the T. & N. O. R. R., testified that eight passenger trains, four going east and four going west, pass over the bridge each day, and that approximately 5000 freight cars go over the bridge each month, and that practically every one of them carries interstate freight.

The testimony as to the character of the business in which the Public Belt Railroad Commission of New Orleans is engaged, and as to the use made of the Huey P. Long Bridge, is not disputed. Our conclusion is, and we hold, that the one is a common carrier by railroad and is engaged in interstate commerce and that the other is an instrumentality used in interstate commerce.

The deceased was employed to work, and at the time of his death was working, on that part of the bridge built and used for railroad purposes. He was employed in interstate commerce.

Clearly plaintiffs' cause of action, if they have any, arises under the Federal Em-

ployers' Liability Act, quoted in our original opinion. They therefore have no cause of action under the State Workmen's Compensation Act. In the case of St. Louis, San Francisco & Texas R. Co. v. Seale, 229 U.S. 156, 33 S.Ct. 651, 57 L.Ed. 1129, Ann.Cas.1914C, 156, it was held that, where the Federal Employers' Liability Act is applicable, the state statute on the same subject is excluded by reason of the supremacy of the former.

This court has so held in at least two cases: La Casse v. New Orleans T. & M. R. Co., 135 La. 129, 64 So. 1012, and Penny v. New Orleans Great Northern R. Co., 135 La. 962, 66 So. 313.

Section 30 of the State Workmen's Compensation Law (Act No. 20 of 1914, as amended by Act No. 244 of 1920) provides:

"That this Act shall not be construed to apply to any employer acting as a common carrier while engaged in interstate or foreign commerce by railroad, provided that the employee of such common carrier was injured or killed while so employed."

The same section further provides that, if the injury or killing of the employee of a railroad occurs while "the employer and employee are both engaged and employed at the time in an intrastate operation or movement and said movement or operation is not controlled or governed by the laws, rule of liability or method of compensation which has been or may be, established by the Congress of the United States, then this Act shall govern and compensation shall be recovered hereunder".

Neither the employer nor the employee was engaged at the time deceased was killed "in an intrastate operation or movement". Deceased was killed while doing work in connection with the repair and the keeping in a fit condition of the bridge which is an instrumentality in interstate commerce.

■ Counsel for the plaintiffs argue that the Interstate Commerce Commission has no power or control over the Public Belt Railroad, for the reason that the State of Louisiana, under its sovereign power, commanded the City of New Orleans to continue the operation of said railroad through a commission, it being provided in Section 26, Article 14, of the Constitution of 1921, that "Said Public Belt Railroad system shall be and remain the sole property of the people of the City of New Orleans at all times, and shall in no way or manner ever be hypothecated or alienated".

Counsel's theory seems to be that, in as much as the Public Belt Railroad is the property of the people of the City of New Orleans and is operated by the city through an agency created by law, the Federal statutes regulating interstate commerce have no application to it, because it is, in fact, being operated by the state itself. The same argument was made in the case of United States v. California, 297 U.S. 175, 56 S.Ct. 421, 425, 80 L.Ed. 567. Practically the same situation was presented in that case as in the case at bar, and it was held that the State of California, being engaged in interstate commerce by rail, had subjected itself to the commerce power of the United States. In the course of its opinion, the court said:

"No convincing reason is advanced why interstate commerce and persons and property concerned in it should not receive the protection of the act whenever a state, as well as a privately-owned carrier, brings itself within the sweep of the statute, or why its all-embracing language should not be deemed to afford that protection."

True, the court was considering the Federal Safety Appliance Act, 45 U.S.C.A. § 1 et seq. But the principle there announced is applicable to the case at bar.

For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans (Higginbotham v. Public Belt R. Comm., 181 So. 65), sustaining the exception of no right or cause of action tendered by the respondents, now before us for review, under the writ of certiorari herein granted, is affirmed. The right of the plaintiff to apply for rehearing is reserved.