486 So.2d 947 (1986)
SALES TAX DISTRICT NO. 1 OF LAFOURCHE PARISH and Lafourche Parish School Board
v.
EXPRESS BOAT CO., INC.
No. 85 CA 0028.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
Writ Granted May 30, 1986.
*948 Robert L. Roland, Watson, Blanche, Wilson & Posner, Baton Rouge, for plaintiff-appellant, Sales Tax Dist. No. 1 of Lafourche Parish.
Robert Pugh, Jr., Shreveport, for Dept. of Revenue and Taxation, State of La., amicus curiae.
William A. Porteous, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant-appellee Express Boat Co., Inc.
Charles Snyder, John Colbert, and John Landrum, New Orleans, Paul Debaillon, Lafayette, amicus curiae.
Before CARTER, SAVOIE, and ALFORD, JJ.
CARTER, Judge.
Appellants, Sales Tax District No. 1 of the Parish of Lafourche (Police Jury) and the Lafourche Parish School Board (School Board), filed a rule for sales and use taxes against appellee, Express Boat Co., Inc. The trial court rejected appellants' claim, and this appeal was perfected.

BACKGROUND
Pursuant to authority granted by LSA-Const. art. 6, § 29 and LSA-R.S. 33:2737, the School Board and Police Jury each enacted sales and use tax ordinances "upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property and upon the sale of services" as defined in the state sales tax provisions, LSA-R.S. 47:301-318. The School Board and Police Jury ordinances are identically numbered, and each closely track the language of the state sales tax provisions, LSA-R.S. 47:301-318.
At issue in the instant case are Sections 3.01 of the School Board and Police Jury ordinances, which each address exemptions and exclusions from sales and use taxes. The pertinent portion of Section 3.01 of each ordinance provides as follows:
The taxes imposed by this ordinance shall not apply to transactions involving the following tangible personal property:
* * * * * *
(6) The sales of materials and supplies to the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof; nor to repair services performed upon ships or vessels operating exclusively in foreign or in interstate coastwise commerce; nor to the materials and supplies used in such repairs where such materials and supplies enter into and become a component part of such ships or vessels; nor to laundry services performed for the owners or operators of such ships or vessels operating exclusively in foreign or interstate coastwise commerce, where the laundered articles are to be used in the course of the operation of such ships or vessels.
The language of Section 3.01 of each ordinance is identical to the language in LSA-R.S. 47:305.1.[1]
*949 LSA-R.S. 47:305.1 was added to the state sales tax provisions by Acts, 1959, Act. No. 51, and pursuant to the authority contained therein, the State Collector of Revenue promulgated certain regulations in connection with each statute.[2] The regulations promulgated are given the same numerical designations as their statutory counterparts, i.e., LSA-R.S. 47:305.1 is followed by Department of Revenue regulation designated as article 47:305.1.
Article 47:305.1, the regulation promulgated in connection with LSA-R.S. 47:305.1, defines "commerce," "interstate coastwise commerce" and "foreign commerce" as follows:
Commerce means the transporting of goods or persons by ship or vessel.
Interstate coastwise commerce means commerce as defined herein from a point in one state to a point in another state. Commerce from a point in the State of Louisiana to an offshore area is not considered to be interstate commerce within the meaning of these regulations. (Emphasis added)
Foreign commerce means commerce as defined herein from a point in a state to a point in a foreign state.
Article 47:305.1 also provides that:
Exclusive use in foreign or interstate coastwise commerce means the sole and unbroken operation of a ship, vessel or barge, including commercial fishing vessels, in foreign or interstate coastwise commerce for the period of a calendar month.

FACTS
The trial judge's written reasons for judgment, taken in large part from the joint stipulations, correctly and succinctly set forth the facts as follows:
Express Boat Company operates a fleet of offshore supply vessels collectively known as The Cheramie Vessels. There are twenty-eight (28) or twenty-nine (29) vessels in the fleet and they range in length from eighty (80) feet to one hundred sixty (160') feet. The Cheramie Vessels sail from points in Louisiana and Texas to points on the outer continental shelf. They proceed from Venice, Grand Isle, Leeville, Dulac, Morgan City, Intracoastal City, Cameron, Galveston and Free Port to points on the outer continental shelf which are beyond three (3) miles off the coast of Louisiana. The voyages that the vessels go upon subject them to the inland rules of the road and to international rules of the road. The voyages which these vessels make into international waters have a duration of several days. Eventually the vessels return from points on the outer continental shelf to points in Louisiana and Texas. While sailing the high seas over the outer continental shelf the vessels support productions and drilling activity through the delivery and transfer of personnel *950 and supplies to offshore drilling vessels and to platforms concerned with drilling and production of natural gas and oil from the federal domain located three (3) miles seaward of the coast line.
The vessels go eighty (80), ninety (90) or a hundred (100) miles into the sea on the outer continental shelf. On a typical voyage a Cheramie Vessel based at Leeville would transit Lafourche Parish waters on only five (5%) percent of its voyage.
The Cheramie Vessels navigate international waters adjacent to Louisiana and Texas. They encounter ships of foreign nations since their courses must take them through the international trade routes having their terminal at the mouth of the Mississippi River, the buoys at L.O.O.P., and Galveston and Houston, Texas. They carry the American flag and are vessels of the United States.
All of the Cheramie vessels were built in Louisiana, and many of them in Lafourche Parish. Most of the supplies and goods carried by these vessels originate from points outside of Louisiana. As the trial judge noted, the Cheramie vessels proceed from points in Louisiana to drilling ships and platforms on the outer continental shelf, which are clearly within international waters. The vessels are subject to international rules of the road, are duly licensed by the coast guard, and are considered United States vessels. The vessels do not service Louisiana wells. They only service wells on the outer continental shelf. They touch Lafourche Parish in order to go into shipyards for service and repair or pick up and discharge cargo or personnel at Leeville or other points.
The bulk of the tax claimed by appellants herein is for services and/or repairs rendered at Bollinger Shipyard and Allied Shipyard, both of which are in Lafourche Parish. Included in the items sought to be taxed are material, equipment and machinery incorporated into the vessels. In denying appellants' rule for sales and use taxes, the trial judge determined that the Cheramie vessels were engaged exclusively in foreign or interstate coastwise commerce and that the transactions in question were entitled to the exemption provided in Section 3.01 of the School Board and Police Jury ordinances.
Appellants, the Police Jury and School Board, appeal, presenting four issues for review, which are as follows:
1. Is Article 47:305.1 of the Sales Tax Law and Regulations valid? If not, are vessels operating from a point in Louisiana to a point offshore in the Outercontinental Shelf operating exclusively in foreign or interstate coastwise commerce within the meaning of the sales tax ordinances?
2. If such vessels are operating exclusively in foreign or interstate coastwise commerce, are sales of materials, supplies and services to the operator of such vessels exempt where the materials or supplies were not loaded on such vessels at the time of purchase but were instead delivered to a storage facility?
3. If such sales of materials, supplies and services are exempt, is tax nonetheless owed on the 5% of such sales, supplies and services which were not ultimately used by the vessels?
4. Are the preemption and commerce clause defenses asserted by appellee and its exceptions to the procedure applicable?[3]
The primary issue is whether the Department of Revenue regulation enacted pursuant to LSA-R.S. 47:305.1, providing that commerce from a point in the State of Louisiana to an offshore area is not interstate commerce, is valid and legally effective.
Appellants contend that the trial judge erred in finding that the transactions in question were transactions in interstate or *951 foreign commerce and that, as such, are exempt from sales and use taxes by Section 3.01 of the School Board and Police Jury ordinances. Appellants reason that because the School Board and Police Jury ordinances were taken almost verbatim from the State sales tax provisions, the authoritative interpretation and construction given the State sales tax provisions, and Article 47:305.1 in particular, by the Department of Revenue should be applied to their local ordinances.
The trial court concluded, and we agree, that Article 47:305.1 is invalid and that the Department of Revenue overstepped its authority in attempting to redefine foreign and interstate commerce to exclude commerce from a point in the state to an offshore area, which is on the outer continental shelf and in international waters.[4]
The legislature, in enacting LSA-R.S. 47:305.1, used the terms "interstate and foreign coastwise commerce." No attempt was made by the legislature to define or limit those terms. The trial court found, and we agree, as follows:
The Department or (sic) Revenue by regulation has unilaterally redefined interstate and foreign commerce and in so doing has attempted to preserve an obvious area of interstate and foreign commerce for state taxation. The concepts of interstate and foreign commerce are terms well known in law and it can only be presumed that the legislature intended that those words be used in their normal and accepted context without some requirement that vessels operating to the offshore area be included or that a vessel be on a voyage of thirty (30) consecutive days in order to qualify. The effect of the regulations is to emasculate the clear and obvious meaning of the term interstate and foreign commerce. The Courts are not bound by such restrictive and confining administrative definitions but must interpret the statute in the clear and unambiguous way intended by the legislature.
The parish is required to assume the position that the term `interstate and foreign commerce' does not mean what those terms have meant to generations of judges, lawyers and legislators, but instead the wisdom of the Department of Revenue must control. Giving binding interpretations of the statute is a test for the judiciary and not for the Department of Revenue.
In refusing to apply the interpretation given by the Department of Revenue to Article 47:305.1, the trial judge further found, and we agree, that:
The operations of the Cheramie Vessels are not confined exclusively to the jurisdiction and territory of Louisiana. Their navigation affects other nations, states and the United States as a whole. The contracts for the carriage of goods which the Cheramie Vessels performed were, in effect, contracted to carry goods from points in Louisiana to points on the outer continental shelf by way of the Gulf of Mexico. These contracts could not be performed except by going not only out of Louisiana, but out of the United States as well. Commerce includes navigation and intercourse. It is more than just traffic, it is commerce that is necessarily connected with other nations, it is commerce which is extraterritorial. The Gulf of Mexico is not the property of any nation but is common to all. When a Cheramie Vessel leaves Leeville, or some other port, she enters upon navigaiton (sic) which necessarily involved the high seas and hence other nations. While on the high seas, her national character is recognized and she is recognized as an American vessel rather than a Louisiana vessel by all of the vessels of the world. The Cheramie Vessels are not trading with foreign countries *952 but are navigating among them and hence are engaged in commerce. The Cheramie Vessels, while out on the Gulf, are engaged in commerce with foreign nations. The Cheramie Vessels are on the high seas and such a matter concerns external affairs and, in the words of the Supreme Court, `in every just sense, therefore,' the Cheramie Vessels were, `while on the ocean, engaged in commerce with foreign nations.'
Activities similar to those carried out by the Cheramie vessels have consistently been held by the courts to constitute interstate and foreign commerce. The facts in the case sub judice are quite similar to the facts presented in Lord v. Goodall, Nelson & Perkins Steamship Company, 102 U.S. 541, 12 Otto 541, 26 L.Ed. 224 (1881). In Lord, the State of California claimed the right to regulate the liability of owners of the vessels when the vessel plied its trade between San Francisco and San Diego. In its navigation between San Diego and San Francisco, it touched at intermediate points along the coast. The vessel ran on voyages of a total distance of 480 miles on the Pacific Ocean. The vessel neither loaded nor unloaded goods outside of the State of California. The issue presented for the U.S. Supreme Court was whether Congress had the exclusive power to regulate the liability of owners of vessels navigating the high seas, but engaged only in the transportation of goods and passengers between ports and places in the same state. Relying upon fundamental Constitutional commerce jurisprudence emanating from Gibbons v. Ogden, 22 U.S. 1, 9 Wheat. 1, 6 L.Ed. 23 (1824), the U.S. Supreme Court said:
Commerce includes intercourse, navigation, and not traffic alone. This also was settled in Gibbons v. Ogden, supra, 189 [9 Wheat 189]. `Commerce with foreign Nations,' says Mr. Justice Daniel, for the court, in Veazie v. Moor, 14 How., 568, 573, [55 U.S. 568, 573, 14 L.Ed. 545], `must signify commerce which, in some sense, is necessarily connected with these Nations, transactions which either immediately or at some stage of their progress must be extraterritorial.'
The Pacific Ocean belongs to no one Nation, but is the common property of all. When, therefore, The Ventura went out from San Francisco or San Diego on her several voyages, she entered on a navigation which was necessarily connected with other Nations. While on the ocean her national character only was recognized, and she was subject to such laws as the commercial Nations of the world had, by usage or otherwise, agreed on for the government of the vehicles of commerce occupying this common property of all mankind. She was navigating among the vessels of other Nations and was treated by them as belonging to the country whose flag she carried. True, she was not trading with them, but she was navigating with them, and consequently with them was engaged in commerce. If, in her navigation, she inflicted a wrong on another country, the United States, and not the State of California, must answer for what was done. In every just sense, therefore, she was, while on the ocean, engaged in commerce with foreign Nations, and as such she and the business in which she was engaged were subject to the regulating power of Congress.
Navigation on the high seas is necessarily national in its character. Such navigation is clearly a matter of `external concern,' affecting the Nation as a nation in its external affairs. It must, therefore, be subject to the national government.
102 U.S. at 543, 544, 12 Otto at 543, 544, 26 L.Ed. at 266.
Clearly, appellants cannot use the State Department of Revenue's erroneous definition of interstate and foreign commerce to enforce the payment of sales and use taxes on items which are specifically exempted from sales and use taxes in Section 3.01 of each of their ordinances. The trial court correctly determined that the Cheramie vessels were engaged in interstate or foreign commerce and that the *953 transactions in question are exempt from sales and use taxes under Section 3.01 of the School Board and Police Jury ordinances.
Appellants further contend that, even if the vessels are operating exclusively in foreign or interstate commerce, since the materials and supplies sold and the services provided are often delivered to a storage facility before being incorporated into or used to repair the vessels and are not immediately loaded on the vessel at the time of purchase, the materials and supplies are not exempt from sales and/or use tax. Appellants contend that the stipulation was that 95% of the materials, repairs, goods and services, subject to the appellants' tax claims, were ultimately used by the vessel.
Any supplies sold or repairs made at the Lafourche Parish shipyard were destined for foreign and interstate commerce. Certainly, some traverse of Louisiana waters was necessary to reach international waters and the outer continental shelf. However, the services and supplies were invoiced to the vessels. The record also shows that the materials were destined for the vessels, and the testimony was that the items went on or were incorporated into the vessels. It is of no consequence that the goods may first be delivered to a warehouse before being loaded onto or incorporated into the vessels, and it is of no moment that, in the case sub judice, Lafourche Parish water is occupied five percent (5%) of the time by these vessels.
There is a very fine line between what is prohibited as a tax on interstate and foreign commerce and what a state is permitted to tax as concerns interstate and foreign commerce. A state may, in limited situations, tax interstate and foreign commerce to impose "a fair share of the cost of the local government." Freeman v. Hewit, 329 U.S. 249, 253, 67 S.Ct. 274, 277, 91 L.Ed. 265 (1947). A pro-rata formula has been upheld in Braniff Airways v. Nebraska State Board of Equalization and Assessment, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954). However, neither the School Board nor the Police Jury has adopted an ordinance pro-rating sales taxes, and we are not called upon to pass upon the validity of same in this opinion.
Having determined that all the vessels involved in the case sub judice were engaged in foreign or interstate coastwise commerce and that the transactions in question fall within the exemption provided by Section 3.01 of the School Board and Police Jury ordinances, it is unnecessary to determine the issues as to preemption and commerce clause defenses asserted by Express Boat Co., Inc.
For the above reasons, the judgment of the trial court is affirmed at appellants' costs in the amount of $450.00.
AFFIRMED.
NOTES
[1] LSA-R.S. 47:305.1 provides, in pertinent part, as follows:

B. The taxes imposed by R.S. 47:302 and R.S. 47:321 shall not apply to materials and supplies purchased by the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof; nor to repair services performed upon ships or vessels operating exclusively in foreign or interstate coastwise commerce; nor to the materials and supplies used in such repairs where such materials and supplies enter into and become a component part of such ships or vessels; nor to laundry services performed for the owners or operators of such ships or vessels operating exclusively in foreign or interstate coastwise commerce, where the laundered articles are to be used in the course of the operation of such ships or vessels.
[2] LSA-R.S. 47:1511 provides as follows:

In addition to specific authority granted to the collector elsewhere in this Sub-title, the collector is authorized to promulgate, make and publish reasonable rules and regulations for the purpose of the proper administration and enforcement of the provisions of each Chapter in this Sub-title, and the collection of revenues thereunder. Such rules and regulations shall not be inconsistent with the provisions of this Sub-title or other laws or the constitution of this state. These rules and regulations have the full force and effect of law. Any such regulations may be promulgated by making a copy thereof available for inspection at the office of the collector at his official domicile in Baton Rouge, Louisiana, and by publishing a notice to that effect in the official state journal at least three times during a period of ten days.
[3] Although we do not address each assignment of error individually, the opinion disposes of all issues raised.
[4] The article also purports to provide that exclusive use in foreign or interstate coastwise commerce means the sole and unbroken operation of a ship, vessel or barge including commercial fishing vessels and foreign or interstate coastwise commerce for the period of a calendar month.