491 So.2d 154 (1986)
Shirley McNAMARA, Secretary of Department of Revenue & Taxation for the State of Louisiana, Plaintiff-Appellant,
v.
JOHN E. CHANCE & ASSOCIATES, INC., Defendant-Appellee.
No. 85-857.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
*155 James C. Russell Jr. and Joanne B. Wilson, Baton Rouge, for plaintiff-appellant.
Edwards, Stefanski & Barousse, Homer E. Barousse, Jr., Crowley, Liskow & Lewis, John M. Wilson, New Orleans, for defendant-appellee.
Before LABORDE and KING, JJ., and PAVY, Judge Pro Tem.[*]
KING, Judge.
The issue presented by this appeal is whether or not the trial court was correct in finding that defendant's purchases of diesel fuel, during the relevant time period, consisted of 80% of diesel fuel purchases that were exempt from Louisiana sales tax and 20% of diesel fuel purchases that were subject to Louisiana sales tax.
Shirley McNamara, in her official capacity as Secretary of the Department of Revenue *156 and Taxation for the State of Louisiana (hereinafter sometimes referred to as the State), filed suit against John E. Chance and Associates, Inc. (hereinafter sometimes referred to as Chance) to collect unpaid Louisiana sales tax, with interest as provided by law, allegedly owed by Chance to the State. After a trial on the merits, the trial court rendered judgment in favor of the State, holding Chance liable for sales tax on 20% of the diesel fuel which it purchased, during the relevant time period, and legal interest and costs of the proceedings. From this judgment, the State devolutively appealed. Chance subsequently answered the appeal. We affirm.

FACTS
Chance is a surveying company which provides "positioning services" to the offshore oil industry. The work performed by Chance involves positioning drilling rigs, platforms, and pipelines, as well as performing shallow seismic surveys, hydrographic surveys, etc. Survey Boats, Inc. (hereinafter sometimes referred to as Survey), the defendant-taxpayer in a case consolidated at trial and which remains consolidated on appeal with this case, is an affiliate company of Chance and provides boats and/or operation of boats exclusively to Chance. Chance and Survey, even though they are separate corporate entities, are managed as if they were one corporate entity.
Chance operates on the Gulf Coast, from the coast of Texas to the coast of Florida, and, on occasions, on the East Coast. The boats belonging to Chance that are assigned to the Louisiana area purchase diesel fuel at fuel docks located at various places on the coast of Louisiana, and such diesel fuel is used to operate the boats. Most of the services performed by Chance are performed beyond Louisiana's three-mile territorial limit. Therefore, most of the diesel fuel purchased by Chance is also used or consumed beyond the Louisiana three-mile territorial limit.
On May 26, 1978, the State filed suit against Chance, seeking payment of $11,865.38 which the State alleged was owed by Chance for unpaid Louisiana sales tax on Chance's purchases of diesel fuel during the period of time from January 1, 1973 through July 30, 1977. The State further sought payment from Chance of interest on the unpaid taxes allegedly owed as well as costs of the proceedings. The State thereafter filed a supplemental petition, requesting judgment against Chance for an additional $10,866.60, which the State alleged was owed for unpaid Louisiana sales tax accruing during the period of time from January 1, 1978 through December 31, 1978. The total sales taxes sought from Chance were $22,731.98. In its Answer, Chance claimed that it was statutorily exempt from payment of the sales tax.
The State also filed a separate suit against Survey to recover unpaid Louisiana sales tax in the amount of $18,684.40, allegedly owed by Survey on diesel fuel purchases made during the period of time from January 1, 1973 through July 31, 1977. The State also filed a supplemental petition in that suit to also seek recovery of Louisiana sales tax in the amount of $4,986.00 allegedly owed by Survey for the period of time from January 1, 1978 through December 31, 1978. The total sales taxes sought from Survey were $23,670.40. The case sub judice was consolidated for trial with the suit entitled Shirley McNamara, Secretary of the Department of Revenue and Taxation, State of Louisiana v. Survey Boats, Inc., 491 So.2d 160 (La.App. 3rd Cir.1986) bearing Number 781,900 on the Docket of the Fifteenth Judicial District Court. Judgment was rendered in that suit in favor of the State and against Survey; the State appealed, and Survey answered the appeal. These suits remain consolidated on appeal and, since the law and relevant facts are common to both, our opinion here is equally applicable. However, we render a separate judgment in the consolidated case of Shirley McNamara, Secretary of the Department of Revenue and Taxation, State of Louisiana v. Survey Boats, Inc., 491 So.2d 160 (La.App. 3rd Cir.1986).
*157 At the time of the trial, the parties introduced into evidence a joint stipulation which basically stated that of the 1,029,131.00 gallons of diesel fuel purchased by Chance during the period of January 1, 1973 through July 30, 1977, 237,317.60 gallons (23.06%) were used in Louisiana waters, and 791,813.40 gallons (76.94%) were used in federal waters. It was further stipulated that of the 1,769,745.00 gallons of diesel fuel purchased by Survey during this same time period, 408,103.25 gallons (23.06%) were used in Louisiana waters, and 1,361,641.75 gallons (76.94%) were used in federal waters.
After a trial on the merits, the trial court concluded that 80% of the diesel fuel purchases by Chance and Survey were exempt from the Louisiana State sales tax since that portion of the fuel purchased was consumed in the course of interstate commerce. Therefore, the trial court rendered judgment, which was signed on June 6, 1985, in favor of the Department and against Chance and Survey in the amount of $17,528.17, together with interest at the rate of 15% per annum from June 1, 1985 until paid, and all costs of the proceedings.
The Department devolutively appealed the trial court judgment, contending that the trial court erred in finding that 80% of the diesel fuel purchases made by Chance and Survey, during the relevant time period, were exempt from Louisiana sales tax. Chance and Survey answered the appeal, contending that 100% of their fuel purchases, during the relevant time period, should be exempt from Louisiana sales tax.

EXEMPTION FROM SALES TAX
LSA-R.S. 47:302(A)(1) and LSA-R.S. 47:321(A)(1) impose a tax of two percentum (2%) and one per percentum (1%) to be levied, upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property. Diesel fuel is tangible personal property. See LSA-R.S. 47:301(16). Thus purchases of diesel fuel in Louisiana by Chance and Survey would be subject to Louisiana sales tax unless they are specifically exempted or excluded from such tax.
The trial court judgment, which exempted 80% of the diesel fuel purchases made by Chance and Survey from the Louisiana sales tax provided for by LSA-R.S. 47:302 and LSA-R.S. 47:321, was apparently based upon the exemption contained in LSA-R.S. 47:305.1(B), which provides in relevant part that:
"The taxes imposed by R.S. 47:302 and R.S. 47:321 shall not apply to materials and supplies purchased by the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof; ..." LSA-R.S. 47:305.1(B).
On appeal, the State contends that LSA-R.S. 47:305.1(B) does not exempt any of the diesel fuel purchases made by Chance and Survey from Louisiana sales tax. To the contrary, Chance and Survey contend that this statute exempts 100% of their diesel fuel purchases.
In its appellate brief, the State contends, and we agree, that in order for a taxpayer to qualify for the exemption provided for by LSA-R.S. 305.1(B), the taxpayer must establish that:
(1) the items purchased are "ship materials and supplies;"
(2) the supplies must be used or consumed in the operation or maintenance of the ship or vessel; and
(3) the ship must be operating exclusively in foreign or interstate coastwise commerce.
In its brief, the State acknowledged that the diesel fuel purchased by Chance and Survey constitutes "ship materials and supplies." The State further acknowledged that the diesel fuel purchased by Chance and Survey was used or consumed in the operation of the ships or vessels. Therefore, the only argument that the State has made on appeal in support of its contention that the trial court erred in holding that *158 80% of the diesel fuel purchases in question were tax-exempt is that the ships/vessels upon which the diesel fuel was loaded did not operate exclusively in foreign or interstate coastwise commerce and for this reason the diesel fuel purchases are subject to Louisiana sales tax.
LSA-R.S. 47:1511 empowers the State Collector of Revenue to promulgate reasonable rules and regulations for the proper administration and enforcement of the provisions of the tax statutes, contained in Title 47 of the Louisiana Revised Statutes, which shall not be inconsistent with those tax statutes. The Regulations which are promulgated are given the same numerical designations as their statutory counterparts, i.e., LSA-R.S. 47:305.1 has a Department of Revenue and Taxation Regulation designated as Article 47:305.1.
In support of its position, the State relies on Article 47:305.1 of its Regulations, promulgated in connection with LSA-R.S. 47:305.1, which defines "commerce," "interstate coastwise commerce," and "foreign commerce" as follows:
"Commerce means the transporting of goods or persons by ship or vessel.
Interstate coastwise commerce means commerce as defined herein from a point in one state to a point in another state. Commerce from a point in the State of Louisiana to an offshore area is not considered to be interstate commerce within the meaning of these regulations.
Foreign commerce means commerce as defined herein from a point in a state to a point in a foreign state.
Exclusive use in foreign or interstate coastwise commerce means the sole and unbroken operation of a ship, vessel or barge, including commercial fishing vessels, in foreign or interstate coastwise commerce for the period of a calendar month."
A Regulation issued by the Department of Revenue and Taxation which goes beyond the terms of the related statute is invalid. McNamara v. Patterson Services, Inc., 382 So.2d 971 (La.App. 1st Cir.1980). In the recent case of Sales Tax Dist. No. 1 v. Express Boat Co., 486 So.2d 947 (La.App. 1st Cir.1986), the First Circuit Court of Appeal held that Article 47:305.1 of the Regulations of the Department of Revenue and Taxation was invalid, and that the State overstepped its authority in attempting to redefine foreign and interstate commerce in Article 47:305.1 of its Regulations to exclude commerce from a point in this state to an offshore area, located on the outer continental shelf and in international waters. At issue in that case was the question of whether or not the taxpayer was exempt from sales taxes provided for by parish-wide ordinances because of other provisions of the parish-wide ordinances which closely followed the language of LSA-R.S. 47:305.1. The First Circuit approvingly quoted the trial court as follows:
"The Department or (sic) Revenue by regulation has unilaterally redefined interstate and foreign commerce and in so doing has attempted to preserve an obvious area of interstate and foreign commerce for state taxation. The concepts of interstate and foreign commerce are terms well known in law and it can only be presumed that the legislature intended that those words be used in their normal and accepted context without some requirement that vessels operating to the offshore area be included or that a vessel be on a voyage of thirty (30) consecutive days in order to qualify. The effect of the regulations is to emasculate the clear and obvious meaning of the term interstate and foreign commerce. The Courts are not bound by such restrictive and confining administrative definitions but must interpret the statute in the clear and unambiguous way intended by the legislature." Sales Tax Dist. No. 1 v. Express Boat Co., 486 So.2d 947, at page 951 (La.App. 1st Cir. 1986).
We conclude, as did the First Circuit under similar circumstances, that Article 47:305.1 of the Regulations, issued by the Department of Revenue and Taxation, is invalid.
*159 Mr. Herschel Truelove, who at the time of trial was president of both Chance and Survey, testified that 20% of the companies' work was performed within Louisiana's three-mile territorial limit and that 80% of the companies' work was performed beyond Louisiana's three-mile territorial limit. Also, as previously observed, the State, Chance and Survey jointly stipulated that of the 1,029,131.00 gallons of diesel fuel purchased by Chance, 237,317.60 gallons were used within Louisiana waters, and 791,813.40 gallons were used in federal waters. The parties further stipulated that of the 1,769,745.00 gallons of diesel fuel purchased by Survey, 408,103.25 gallons were used in Louisiana waters, and 1,361,641.75 gallons were used within federal waters.
In its Reasons for Judgment, the trial court noted that the services rendered by Chance and Survey within Louisiana's territorial limits do not constitute interstate commerce. We agree, and therefore find that the trial court's ruling that the diesel fuel purchased by Chance and Survey which was used in the course of rendering these interstate services is not exempt from Louisiana sales tax under LSA-R.S. 47:305.1(B). However, the trial judge also held that the services rendered beyond Louisiana's territorial limit do constitute interstate commerce, and based on the estimates made by Mr. Truelove, found that approximately 80% of the diesel fuel purchases made by Chance and Survey were clearly exempt from Louisiana sales tax.
We do not necessarily agree with the trial court that the services rendered by Chance and Survey beyond Louisiana's three-mile territorial limit are in interstate commerce. We do find that these services are in "foreign or interstate coastwise commerce," as required under LSA-R.S. 47:305.1(B) to qualify for the sales tax exemption. The Supreme Court of the United States long ago stated:
"Commerce includes intercourse, navigation, and not traffic alone. This also was settled in Gibbons v. Ogden, supra, 189. `Commerce with foreign Nations,' says Mr. Justice Daniel, for the court, in Veazie v. Moor, 14 How., 568, 573, `must signify commerce which, in some sense, is necessarily connected with these Nations, transactions which either immediately or at some stage of their progress must be extraterritorial.'" Lord v. Goodall, Nelson & Perkins Steamship Company, 102 U.S. (12 Otto) 541, 26 L.Ed. 224, at page 226 (1881).
See also Sales Tax Dist. No. 1 v. Express Boat Co., supra.
According to the parties' stipulation, 76.94% of the diesel fuel purchased by Chance and Survey was used in federal waters. Mr. Truelove testified that 80% of the work of Chance and Survey was performed outside of Louisiana waters or in traveling to federal waters, and the trial judge held 80% of the diesel fuel purchases made by Chance and Survey were exempt from Louisiana sales tax. We do not find that based on the evidence in the record the trial judge was clearly wrong or manifestly in error in making this determination.
This Court is well aware of the long-established rule that exemptions from taxation are to be strictly construed and must be unequivocally and affirmatively established. Vulcan Foundry, Inc. v. McNamara, on rehearing, 414 So.2d 1193 (La.1982); Cajun Elec. Power Co-op, Inc. v. McNamara, 452 So.2d 212 (La.App. 1st Cir.1984), writ den., 458 So.2d 123 (La. 1984). In view of the fact that the State stipulated to the exact number of gallons of diesel fuel used by Chance and Survey in federal waters, which is almost 80% of their diesel fuel purchases, and the testimony of Mr. Truelove, which is uncontradicted, we conclude that the trial court's judgment exempting 80% of the diesel fuel purchases made by Chance and Survey, during the relevant time period, from state sales tax is not clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Defendants-appellees urge that Act 631 of 1985, which became effective on July 16, *160 1985 after this case was tried, should be applied retrospectively. This statute specifically exempts diesel fuel purchases, such as those made by Chance and Survey, from sales/use taxes for diesel fuel first used in offshore waters beyond the three-mile territorial limit of Louisiana and would not exempt diesel fuel used in Louisiana waters from sales/use taxes. This statute also has no requirement that the vessel be operated in "foreign or interstate coastwise commerce" to receive the benefits of this exemption.
The State urges that since the entire claim for unpaid Louisiana sales taxes sought from Chance and Survey is a debt owed to the State, and is certainly a debt insofar as the judgment rendered herein against Chance and Survey for 20% of the claimed unpaid Louisiana sales tax, that Act 631 of 1985 cannot operate retroactively to nullify the claimed debt or the rendered judgment to release Chance and Survey from their obligations to the State because it would violate the provisions of Article 7, Section 15 of the Louisiana Constitution of 1974. It should be noted that even if this act were retroactively applied to this case it would not substantially alter the decision of the trial court in light of the stipulation of the parties and the uncontradicted evidence concerning the use of diesel fuel inside and outside of Louisiana's three-mile territorial limit. However, in light of our holding herein we do not reach the issue of whether Act 631 of 1985 should be applied retrospectively or its constitutionality if retrospectively applied.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the defendant-appellee.
AFFIRMED.
PAVY, J. Pro Tem., dissents.
NOTES
[*] Judge H. Garland Pavy of the Twenty-Seventh Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.