802 So.2d 1270 (2001)
ARCHER DANIELS MIDLAND COMPANY, et al.
v.
The PARISH SCHOOL BOARD OF THE PARISH OF ST. CHARLES, Individually and as Collecting Agent for the Parish Council of St. Charles, et al.
Tulane Fleeting, Inc.
v.
The Parish School Board of the Parish of St. Charles, Individually and as Collecting Agent for the Parish Council of St. Charles, et al.
No. 2001-C-0511.
Supreme Court of Louisiana.
November 28, 2001.
Rehearing Denied March 18, 2002.
*1272 Roy M. Lilly, Jr., Minden, Andrew A. Lemmon, New Orleans, for Applicant.
William M. Backstrom, Jr., Laura L. Blackston, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Respondent.
Larry Dewayne Dyess, Belle Chasse, for St. John Parish School Bd., Ascension Parish Tax Authority, West Baton Rouge Parish Dept. of Revenue (Amicus Curiae).
Johnette L. Martin, Houma, for Plaquemines Parish Government, Palquemines Parish Council (Amicus Curiae).
John D. Schoonenberg, Houma, for Terrebonne Parish Sales Tax & Use Dept. (Amicus Curiae).
Geneva Landrum, Baton Rouge, for Cynthia Bridges, Secretary of Dept. of Revenue (Amicus Curiae).
John L. Lanier, Thibodeaux, for Lafourche Parish School Bd. (Amicus Curiae).
Lea A. Batson, Baton Rouge, for East Baton Rouge Parish Dept. of Revenue (Amicus Curiae).
Alan G. Brackett, New Orleans, Stephen M. Huber, River Ridge, for Greater New Orleans Barge Fleeting Ass'n (Amicus Curiae).
KNOLL, Justice.[*]
This writ concerns whether a group of taxpayers, which operates tugboats wholly within Louisiana waters, is entitled to a sales tax exemption under a parish ordinance exempting fuel purchases by "owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce." Because taxpayers' tugboats operate wholly within Louisiana waters, we find taxpayers' tugboats are not "operating exclusively in foreign or interstate coastwise commerce" within the meaning of the sales tax exemption. Accordingly, we hold taxpayers are not entitled to the sales tax exemption and reverse the lower courts.

FACTS AND PROCEDURAL HISTORY
Plaintiffs/taxpayers, Archer Daniels Midland Company, ADM/Growmark River Systems, Inc., and Tulane Fleeting, Inc. (Taxpayers), operate a fleet of tugboats in St. Charles Parish. The tugboats are used when river barges, loaded with grain originating in the northern and mid-western states and destined for points outside Louisiana, *1273 arrive by multi-barge tows in St. Charles Parish.[1] When a tow of barges arrives in St. Charles Parish, Taxpayers use their tugboats to break up the tow and shift the barges to a fleeting area along the Mississippi River for safekeeping until the barges are ready to be unloaded. When a barge is ready to be unloaded, Taxpayers' tugboats shift the barge from the fleeting area to the unloading area. The grain is then unloaded either directly onto an ocean-going vessel or into a grain elevator to wait for an ocean-going vessel. The tugboats then shift the barges back to the fleeting area until they are picked up for transport back up river. The parties stipulated that Taxpayers' vessels never leave the waters of St. Charles Parish while performing these fleeting and shifting services.
During the taxable period at issue, January 1, 1985 through December 31, 1993, Taxpayers purchased, and subsequently used, fuel to operate their tugboats. Believing the fuel purchases were exempt from parish sales tax pursuant to a St. Charles Parish ordinance exempting such purchases by "owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce," Taxpayers omitted payment of St. Charles Parish sales tax on the fuel purchases. Thereafter, defendant/taxing authority, St. Charles Parish School Board (St. Charles), audited Taxpayers for the taxable period at issue and determined Taxpayers' fuel purchases were not exempt. After paying the disputed taxes and related interest under protest, Taxpayers filed this suit for recovery of the protested amount and moved for summary judgment.
In support of their motion for summary judgment, Taxpayers argued that because their tugboats facilitate the movement of goods in foreign or interstate commerce, their tugboats operate "exclusively in foreign or interstate coastwise commerce," and, thus, they are entitled to the sales tax exemption. In opposition to the motion for summary judgment, St. Charles argued, although Taxpayers' tugboats may facilitate the movement of goods in foreign or interstate commerce, because Taxpayers' tugboats never leave Louisiana waters, Taxpayers' tugboats are not operating "exclusively in foreign or interstate coastwise commerce," and, thus, Taxpayers are not entitled to the sales tax exemption. Agreeing with Taxpayers, the district court granted summary judgment in favor of Taxpayers and ordered St. Charles to refund the taxes paid under protest plus interest. On appeal, the Fifth Circuit affirmed.[2] We granted St. Charles' writ to examine the correctness vel non of the lower courts' holdings.[3]

DISCUSSION
By parish ordinance, St. Charles imposes a sales tax upon tangible personal property sold at retail within St. Charles Parish.[4] Fuel is "tangible personal property" within the meaning of the ordinance. *1274 Thus, Taxpayers' purchases of fuel are subject to St. Charles Parish sales tax unless, as Taxpayers assert, they are exempted from the tax.
We note that the St. Charles Parish sales tax levied upon Taxpayers' fuel purchases does not raise any constitutional concerns. Under settled United States Supreme Court jurisprudence, a local sale with a local delivery may be subjected to a sales tax even if the purchaser is engaged in foreign or interstate commerce within the meaning of the Commerce Clause. See International Harvester Co. v. Indiana, 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944); Indiana v. Wood Preserving Corp., 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188 (1941). Thus, because the sale and delivery of the fuel at issue occurred in St. Charles Parish, clearly, St. Charles may tax this totally intrastate transaction even if Taxpayers are, in fact, engaged in foreign or interstate commerce within the meaning of the Commerce Clause.[5]See Oklahoma Tax Commission v. Jefferson Lines, Inc., 514 U.S. 175, 184, 115 S.Ct. 1331, 1338, 131 L.Ed.2d 261, 271 (1995) ("It has long been settled that a sale of tangible goods has a sufficient nexus to the State in which the sale is consummated to be treated as a local transaction taxable by that State."). Indeed, the issue before this court pertains only to whether Taxpayers are entitled to a sales tax exemption on otherwise taxable sales.
Taxpayers allege their fuel purchases are exempted from parish sales tax pursuant to Section 3.01 of the St. Charles Parish School Board General Sales and Use Tax Ordinance, which provides:
The taxes imposed by this ordinance shall not apply to transactions involving the following tangible personal property.
. . . .
(6) The sales of materials and supplies to the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof;....
This parish sales tax exemption is modeled on the state sales tax exemption, see LSA-R.S. 47:305.1(B), and, thus, incorporates the interpretation of the state sales tax exemption. See Sales Tax Dist. No. 1 of Lafourche Parish v. Express Boat Co., Inc., 500 So.2d 364, 367 (La.1987). Moreover, LSA-R.S. 47:305.1(C) provides: "The exemption from the state sales tax provided in this Section shall be applicable to any sales tax levied by a local governmental subdivision or school board." Consequently, to decide the present matter, we must interpret LSA R.S. 47:305.1(B).

LSA-R.S. 47:305.1(B)
LSA-R.S. 47:305.1 was enacted by 1959 La. Acts 51 and contains the following sales tax exemption at issue:
The taxes imposed by R.S. 47:302 and R.S. 47:321 shall not apply to materials and supplies purchased by the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise *1275 commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof;....
LSA-R.S. 47:305.1(B). In order for a taxpayer to qualify for this sales tax exemption, the taxpayer must establish: (1) he is an owner or operator of a ship or vessel purchasing materials or supplies; (2) the materials or supplies purchased are used or consumed in the maintenance or operation of the ship or vessel; and (3) the ship or vessel operates exclusively in foreign or interstate coastwise commerce. See McNamara v. John E. Chance & Associates, Inc., 491 So.2d 154, 157 (La.App. 3rd Cir.1986).
In the present matter, Taxpayers are the owners or operators of vessels (i.e., tugboats). Taxpayers purchased supplies (i.e., fuels), which were consumed in the operation of their vessels (i.e., while performing fleeting and shifting services). Thus, the only issue before this court is whether Taxpayers' tugboats operate "exclusively in foreign or interstate coastwise commerce" within the meaning of the sales tax exemption.
Relying on this court's decision in Sales Tax Dist. No. 1 of Lafourche Parish v. Express Boat Co., Inc., 500 So.2d 364 (La. 1987) and the First Circuit's decision in Cooper Stevedoring Co., Inc. v. Secretary of Louisiana Dept. of Revenue and Taxation, 555 So.2d 32 (La.App. 1st Cir.1989), Taxpayers contend federal jurisprudence interpreting the Commerce Clause should be used to interpret LSA-R.S. 47:305.1(B)'s phrase "operating exclusively in foreign or interstate coastwise commerce."[6] Under United States Supreme Court jurisprudence, Taxpayers assert, interstate and foreign commerce status is determined by examining the movement of the cargo, not the ship or vessel: "The U.S. Supreme Court holds that activities taking place solely in one state are part of interstate or foreign commerce if those activities facilitate the movement of cargo in interstate or foreign commerce."[7] Thus, Taxpayers argue, because their tugboats facilitate the movement of cargo, in this case grain, in foreign or interstate commerce, their tugboats operate "exclusively in foreign or interstate coastwise commerce," entitling them to the sales tax exemption. For the reasons expressed infra, we reaffirm and clarify Express Boat Co., Inc., but overrule Cooper Stevedoring Co., Inc.
The taxpayer in Express Boat Co., Inc. operated a fleet of offshore supply vessels between Louisiana ports and points on the Outer Continental Shelf, which is the part of the Continental Shelf lying three miles or more from the coast of the United States. See 43 U.S.C. § 1331(a). Believing its vessels were "operating exclusively in foreign or interstate coastwise commerce," when the taxpayer purchased repair parts and repair services for its vessels in Lafourche Parish, the taxpayer treated such purchases as exempt from *1276 parish sales tax pursuant to Section 3.01(6) of the Lafourche Parish Sales Tax Ordinance.
However, the parish taxing authorities, relying on a Department of Revenue and Taxation regulation, took the position that the taxpayer's vessels were not "operating exclusively in foreign or interstate coastwise commerce" within the meaning of the parish sales tax exemption. Specifically, the parish taxing authorities asserted the taxpayer was not entitled to the parish sales tax exemption because, under the regulation, "foreign commerce" means commerce from a point in a state to a point in a foreign state, and "interstate coastwise commerce" is not commerce from a point in the state of Louisiana to an offshore area.
In interpreting the parish sales tax exemption, this court found, because the parish sales tax exemption is modeled on the state sales tax exemption, LSA-R.S. 47:305.1(B), the parish sales tax exemption incorporates the interpretation of the state sales tax exemption. This court also found LSA-R.S. 47:305.1(B)'s terms "foreign commerce" and "interstate coastwise commerce" "do have a well established legal meaning, a meaning which is broader than the limited definition which the Department of Revenue and Taxation attempts to give" in its regulation. Id. at 369. The court noted that activities similar to those carried out by the taxpayer's vessels have consistently been characterized by the courts as foreign commerce. Thus, this court held the taxpayer was entitled to the sales tax exemption because its vessels, which were subject to the international rules of the road while navigating on the high seas over the Outer Continental Shelf, were operating in "foreign commerce" within the meaning of LSA-R.S. 47:305.1(B). In determining whether the taxpayer's vessels were "operating exclusively in foreign or interstate coastwise commerce" within the meaning of LSA-R.S. 47:305.1(B), this court focused on the movement of the taxpayer's vessels and stated:
The courts below were correct in concluding that the Legislature intended, when using the words, "foreign ... commerce" in the statutory exemption, that a vessel's venturing into the Gulf of Mexico beyond the territorial boundaries of the State of Louisiana and the United States would constitute engaging in foreign commerce.
Id. at 370.[8]
This court's holding in Express Boat Co., Inc. indicates the movement of the taxpayer's ships or vessels, not the movement of the cargo, is determinative of whether the taxpayer's ships or vessels operate "exclusively in foreign or interstate coastwise commerce" within the meaning of LSA-R.S. 47:305.1(B). Thus, while we acknowledge Express Boat Co., Inc. contains language that was not necessary to its holding, i.e., implying that federal jurisprudence interpreting the Commerce Clause should be used to interpret LSA-R.S. 47:305.1(B)'s phrase "operating exclusively in foreign or interstate coastwise commerce," we are not constrained by this dicta. Rather, in deciding the *1277 present matter, we reaffirm and clarify this court's ruling in Express Boat Co., Inc.
We find, as this court did in Express Boat Co., Inc., in determining whether a taxpayer's ships or vessels operate "exclusively in foreign or interstate coastwise commerce" within the meaning of LSA-R.S. 47:305.1(B), the focus must be on the movement of the taxpayer's ships or vessels. For the taxpayer to qualify for the sales tax exemption, the taxpayer's ships or vessels must leave Louisiana waters.
Taxpayers contend the court of appeal in Cooper Stevedoring Co., Inc. v. Secretary of Louisiana Dept. of Revenue and Taxation, 555 So.2d 32 (La.App. 1st Cir.1989), "followed the federal lead and established that transportation equipment does not have to leave the State of Louisiana to be operated exclusively in foreign or interstate coastwise commerce" within the meaning of LSA-R.S. 47:305.1(B).[9] In Cooper Stevedoring Co., Inc., the issue presented was whether the taxpayer's vessels, which operated wholly within Louisiana waters and provided stevedoring services to vessels engaged in foreign or interstate commerce, were "operating exclusively in foreign or interstate coastwise commerce" within the meaning of LSA-R.S. 47:305.1(B). In performing the stevedoring services, the taxpayer operated crane and conveyor barges to transfer grain, coal, and other commodities from barges originating within the United States to ships that delivered the commodities to points outside the United States. The taxpayer also operated crewboats to transport persons and supplies to and from its barges. Believing its vessels were "operating exclusively in foreign or interstate coastwise commerce," when the taxpayer purchased supplies, repair parts, and repair services for its vessels, the taxpayer treated such purchases as exempt from sales tax pursuant to LSA-R.S. 47:305.1(B).
In determining whether the taxpayer's vessels were, in fact, "operating exclusively in foreign or interstate coastwise commerce" within the meaning of LSA-R.S. 47:305.1(B), the First Circuit looked to federal jurisprudence interpreting the Commerce Clause, particularly the United States Supreme Court's holding in Washington v. Ass'n of Wash. Steve. Co., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978). Citing that case, the court reasoned, because the taxpayer's vessels facilitate foreign or interstate commerce, the taxpayer's vessels operate "exclusively in foreign or interstate coastwise commerce" within the meaning of the sales tax exemption. Thus, the court held the taxpayer was entitled to the sales tax exemption provided by LSA-R.S. 47:305.1(B) despite the fact that the taxpayer's vessels operate wholly within Louisiana waters.
We find the court of appeal in Cooper Stevedoring Co., Inc. erred by using federal jurisprudence interpreting the Commerce Clause to interpret LSA-R.S. 47:305.1(B)'s phrase "operating exclusively in foreign or interstate coastwise commerce." Rather, the court of appeal should have focused on the movement of the taxpayer's ships or vessels. Thus, we now overrule Cooper Stevedoring Co., Inc.
We further find that our interpretation of LSA-R.S. 47:305.1(B)'s phrase "operating exclusively in foreign or interstate coastwise commerce" is in accord with the apparent purpose behind the sales *1278 tax exemption and the strict statutory construction applied to sales tax exemptions. By enacting the sales tax exemption at issue, the legislature sought to encourage owners and operators of ships or vessels operating in foreign or interstate commerce to purchase materials and supplies in Louisiana. Because such persons are in a position to purchase materials and supplies in multiple jurisdictions and concomitantly choose the most favorable taxing jurisdiction, this state seeks their business by providing a sales tax exemption on such purchases. The sales tax exemption also eliminates competitive disadvantages which would arise if Louisiana imposed a sales tax on such purchases, but other jurisdictions exempted such purchases from a sales tax. See Charles D. Marshall, Louisiana Sales and Use Tax Problems of the Maritime Operator, 35 Tul. L.Rev. 183, 206 (1960).
In the present matter, the court of appeal stated:
Moreover, we are bolstered in our interpretation by considering the purpose of the statute. The purpose of the exemption is to attract business to Louisiana by making us competitive with the surrounding ports. The purpose of the exemption will be furthered if it is applied to these tugboats that assist the grain barges in reaching their unloading destination within St. Charles Parish. If the exemption is not applicable, considering the mobile nature of interstate commerce, business may be attracted elsewhere.
776 So.2d at 589. We find the court of appeal misinterpreted the purpose of the sales tax exemption. The purpose behind the sales tax exemption is not to prevent the departure of businesses, such as Taxpayers, from Louisiana. Rather, as stated above, the purpose of the sales tax exemption is to encourage owners and operators of ships or vessels operating in foreign or interstate commerce to purchase materials and supplies in Louisiana instead of another jurisdiction. Thus, considering Taxpayers' tugboats operate wholly within Louisiana waters, we find, contrary to the court of appeal, the purpose of the sales tax exemption is not furthered by applying the exemption in the present matter.
We also note that, if we accepted Taxpayers' argument, nearly every owner and operator of a ship or vessel engaged in commerce and plying Louisiana waters would be entitled to the sales tax exemption. Indeed, for example, many vessels engaged in the seafood industry would claim entitlement to the sales tax exemption, e.g., the owners and operators of shrimp boats operating wholly within Louisiana waters would be entitled to the sales tax exemption if the shrimp they caught were destined for places outside Louisiana because these boats facilitate the movement of cargo, i.e., shrimp, in foreign or interstate commerce. We do not believe the legislature intended for the sales tax exemption to be interpreted so expansively. See Falgout v. Dealers Truck Equipment Co., 98-3150 (La.10/19/99), 748 So.2d 399, 401 ("Under the general rules of statutory construction, courts begin with the premise that legislation is the solemn expression of legislative will and, therefore, the interpretation of a law involves, primarily, the search for the legislature's intent."). Nor is such a broad interpretation of the sales tax exemption proper under our rules of statutory construction. It is well established that exemptions from taxation are strictly construed against the taxpayer claiming the benefit thereof and must be clearly, unequivocally, and affirmatively established by the taxpayer. See *1279 McNamara v. Central Marine Service, Inc., 507 So.2d 207, 208 (La.1987).

CONCLUSION
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See LSA-C.C.P. art. 966(B). Because Taxpayers' tugboats operate wholly within Louisiana waters, we find Taxpayers' tugboats are not "operating exclusively in foreign or interstate coastwise commerce" within the meaning of the St. Charles Parish sales tax exemption. Thus, we hold Taxpayers are not entitled to the sales tax exemption. Consequently, Taxpayers are also not entitled to judgment as a matter of law. Accordingly, we reverse the lower courts and remand this matter to the district court for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
JOHNSON, J., dissents and assigns reasons.
VICTORY, J., concurs.
JOHNSON, J., dissenting.
In Sales Tax Dist. No. 1 of Lafourche Parish v. Express Boat Co., Inc., 500 So.2d 364 (La.1987), this court relied on federal jurisprudence to interpret the meaning of the phrase "operating exclusively in foreign or interstate coastwise commerce." I must support the broad federal definition of foreign and interstate commerce.
Federal courts have historically considered certain activities to be interstate or foreign commerce, even when the activities are performed entirely within one state, if the activity is part of or facilitates the stream of interstate or foreign commerce. See Dept. of Rev., Etc. v. Ass'n of Wash. Steve. Co., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978); Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326, ftnt. 4 (1977); Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993 (1947), overruled on other grounds by Dept. of Rev., Etc. v. Ass'n of Wash. Steve. Co., supra; The Daniel Ball v. United States, 10 Wall. 557, 77 U.S. 557, 19 L.Ed. 999 (1871); Foster v. Davenport, 22 How. 244, 63 U.S. 244, 16 L.Ed. 248 (1859); Higginbotham v. Public Belt Railroad Commission, 192 La. 525, 188 So. 395 (1938).
The services performed by the river tugboats herein are clearly "part of or facilitates the stream of interstate or foreign commerce." The evidence shows that the tugboats, while operating exclusively in St. Charles Parish, are integral and necessary to the transportation of grain in interstate and foreign commerce. The parties stipulated that the grain is loaded onto river barges in the northern and mid-western states. When the barges subsequently arrive in St. Charles Parish, the grain is either loaded onto an ocean-going vessel for a foreign destination, or unloaded into a grain elevator until a ship becomes available.
I believe the correct analysis is to focus on the cargo which enters interstate and/or foreign commerce in the northern and mid-western states. Surely, every state, county, and parish cannot tax the cargo's movement from loading onto the barges to unloading onto the ocean-going vessels. Such an outcome would be a prohibited burden on interstate commerce.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] While the parties dispute the origin and destination of the grain, these facts are immaterial to our holding.
[2] Archer Daniels Midland Co. v. Parish School Bd. of Parish of St. Charles, 00-1191 (La.App. 5th Cir.12/13/00), 776 So.2d 584.
[3] Archer Daniels Midland Co. v. Parish School Bd. of Parish of St. Charles, XXXX-XXXX (La.05/11/01), 792 So.2d 1.
[4] Article 6, Section 29 of the Louisiana Constitution grants to local governmental subdivisions and school boards the authority to "levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property and on sales of services as defined by law."
[5] The St. Charles Parish sales tax is actually an excise tax, i.e., a tax levied upon the transaction, not the property involved in the transaction.
[6] The Commerce Clause delegates to Congress the power "to regulate Commerce with foreign Nations, and among the several States...." U.S. Const. art. I, § 8, cl. 3. The interpretation of this clause by the United States Supreme Court has changed as our nation has developed. Congress now has considerably greater latitude in regulating conduct and transactions under the Commerce Clause than previous case law by the United States Supreme Court permitted. See United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).
[7] Pl. Brf. at 10.
[8] However, because the parties in Express Boat Co., Inc. stipulated 5% of the purchased materials and supplies were not ultimately used by the vessels, which is a requirement for the sales tax exemption to apply, this court remanded the case to the district court with instructions to cast the taxpayer in judgment for the sales tax on that 5% portion of the supplies and materials purchased.
[9] Pl. Brf. at 13.